**E-Filed 8/25/2011**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| ROBERT CURRY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HANSEN MEDICAL, INC., FREDERIC H. MOLL, STEVEN M. VAN DICK, and GARY C. RESTANI,<br><br>Defendants. | Case Number 5:09-cv-05094-JF (HRL)<br><br>**ORDER[1] GRANTING MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT WITH LEAVE TO AMEND**<br><br>[Re: Docket No. 33] |

Lead Plaintiffs Mina and Nader Farr,[2] together with other named plaintiffs, bring this putative class action on behalf of the shareholders of Hansen Medical, Inc. ("Hansen") who purchased or acquired common stock in Hansen between February 19, 2008 and October 18, 2009 (the "Class Period"). Plaintiffs allege that Hansen and its officers Frederic H. Moll ("Moll"), Steven M. Van Dick ("Van Dick"), and Gary C. Restani ("Restani") (collectively the "Individual Defendants") induced them to acquire common stock at artificially inflated prices

---

[1] This disposition is not designated for publication.

[2] On February 25, 2010, the Court issued an order consolidating this action with two related putative class actions–*Livingstone v. Hansen Medical, Inc. et al.*, C 09-5212-JW and *Prenter v. Hansen Medical, Inc. et al.*, C 09-5367-CRB. Order Granting Motion to Consolidate, Dkt. 15. In that order, the Court also granted a request that Mina and Nader Farr be appointed lead plaintiffs, as they suffered the largest alleged economic loss and otherwise fulfilled the requirements for appointment as lead plaintiffs. *Id.*

during the Class Period by making knowing and intentional misstatements regarding Hansen's revenue recognition and sales performance, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a) (the "Exchange Act") and Rule 10b-5, 17 C.F.R. § 240.10b-5 promulgated thereunder.

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss Plaintiffs' Second Consolidated Amended Complaint ("SCAC")[3] on the basis that Plaintiffs have not alleged securities fraud with sufficient particularity. The Court has reviewed the moving and responding papers and has considered the oral argument of counsel presented at the hearing. For the reasons set forth below, the Court agrees with Defendants that Plaintiffs have not satisfied the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1)-(2) ("PSLRA"). Accordingly, the motion to dismiss will be granted, with leave to amend.

## I. BACKGROUND

**A.     Hansen**

Hansen designs, manufactures, and sells medical robotics, including the Sensei Robotic Catheter System (referred to herein as "Sensei" or the "System")–a robotic system that enables physicians to navigate flexible catheters. SCAC ¶¶ 2-3. Hansen derives the bulk of its revenue from Sensei sales. *Id.* at ¶ 3. Hansen became a public company in 2006, and it recognized its first revenues in the second quarter of 2007, when it launched the Sensei system commercially. *Id.* The company's revenue recognition policy for Sensei sales is based on American Institute of Certified Public Accountants, Statement of Position 97-2, *Software Revenue Recognition* ("SOP 97-2"). Ex. 24 to Defendants' Request for Judicial Notice (hereinafter referred to as "RJN"). Pursuant to SOP 97-2, Hansen recognizes system revenues only after installation of the product and training are complete. *Id.*

---

[3] The parties stipulated previously to the filing of a consolidated first amended complaint and the operative second consolidated amended complaint. *See* April 26, 2010 Stipulation and Order Re Filing of a Consolidated Amended Complaint, Dkt. 21; July 15, 2010 Stipulation and Order Re Filing of a Second Consolidated Amended Complaint, Dkt. 27.

**B.     Internal Investigation**

In August 2009, an anonymous "whistleblower" informed Hansen that an irregularity in a single Sensei transaction had led to improper revenue recognition in the fourth quarter of 2008. *See, e.g.*, SCAC ¶¶ 290, 294, 296.  An investigation conducted by Hansen's audit committee in conjunction with independent outside counsel concluded that sales data on certain transactions was withheld from Hansen's accounting department and independent auditors.  *See, e.g.*, *Id.* at ¶¶ 294, 296.  The investigation also concluded that documents related to certain revenue were falsified and that as a result Hansen's accounting department had incomplete information regarding temporary installations, unfulfilled training obligations, and undisclosed side arrangements.  *Id.*  Additionally, the investigation raised questions with respect to the ability of Hansen's distributors to install systems and train end-users independently.  *Id.*  These findings initially were made public in Hansen's Form 8-K filed with the Securities and Exchange Commission ("SEC") on October 19, 2009.  *Id.* at ¶ 290.

**C.     The Restatement**

On November 16, 2009, after learning of the improper revenue recognition, Hansen restated its financial statements for the year ended December 31, 2008, and for the quarters ended March 31, June 30, and September 30, 2008, as well as March 31 and June 30, 2009.  *See, e.g., Id.* at ¶¶ 289, 295-96.  Plaintiffs claim that the misstatements disclosed in the Restatement were made knowingly and intentionally as part of a scheme to inflate stock prices.  They base this assertion primarily upon the following: (1) information provided by confidential witnesses who were employed by Hansen; (2) the magnitude of the accounting errors that led to the Restatement, and (3) the Individual Defendants' routine interaction with Hansen's core operations.

## II. STANDARD OF REVIEW

"Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of a motion to

3

dismiss, the plaintiff's allegations are taken as true, and the court must construe the complaint in the light most favorable to the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009), *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007). Thus, a court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir. 1994). Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't of Corr.,* 66 F.3d 245, 248 (9th Cir. 1995). When amendment would be futile, however, dismissal may be ordered with prejudice. *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

### III. DISCUSSION

**A.      Section 10(b) Claim**

SEC Rule 10b-5, promulgated under § 10(b) of the Exchange Act "prohibits, in connection with the purchase or sale of any security, the making of any untrue statement of a material fact or the omission of a material fact that would render statements made not misleading." *Basic Inc. v. Levinson*, 485 U.S. 224, 224 (1988); 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. Although the Exchange Act does not expressly create a private right of action for violations of § 10(b), the Supreme Court "has found a right of action implied in the words of the statute and its implementing regulation." *Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 552 U.S. 148, 157 (2008) (citing *Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n. 9 (1971)).

To state a claim for securities fraud under § 10(b) and Rule 10b-5, a plaintiff must plead "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection . . . [with] the purchase or sale of a security; (4) reliance . . .; (5) economic loss; and (6) loss

4

causation." *Id.*; *See also Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). "At the pleading stage, a complaint stating claims under section 10(b) and Rule 10b–5 must satisfy the dual pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009). Rule 9(b) requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ. P. 9(b). Plaintiffs must state "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). Additionally, the PSLRA requires that both falsity and scienter be pled with particularity. *Zucco*, 552 F.3d at 990; *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001).

### 1. Misrepresentations

A securities fraud complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002), (quoting 15 U.S.C. § 78u–4(b)(1)). "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S.Ct. 2296, 2302 (2011).

The PSLRA provides a safe harbor for forward-looking statements that are accompanied by meaningful cautionary language. 15 U.S.C. § 78u–5. Under the statute, a forward-looking statement is defined as:

(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items;

(B) a statement of the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any such statement

5

contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

15 U.S.C. § 78u-5(c).

Plaintiffs allege that during the Class Period, Defendants issued misleading statements in press releases, SEC filings, and conference calls with market participants. SCAC ¶¶ 58-288. For example, Plaintiffs allege that during a conference call in the second quarter of 2009, Moll told investors that Hansen had experienced "four successive quarters of increasing sales in catheters in service." *Id.* at ¶ 274. During that same call, Moll allegedly painted an overly-generous picture of utilization rates, stating "[o]n a positive note, we have had a number of users able to accomplish three procedures a day, and some very active users are accomplishing six procedures a week." *Id.* Plaintiffs claim that statements like these led investors to believe that Hansen's Sensei sales and utilization rates were stable when in fact they were declining.

Statements of present or historical fact are not protected by the PSLRA safe harbor. *See In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 VRW, 2005 WL 1910923, at * 13 (Aug. 10, 2005) (citing *Livid Holdings Ltd. v. Salomon Smith Barney, Inc*., 403 F.3d 1050, 1056-57 (9th Cir. 2005)) ( "[N]either the PSLRA's safe harbor provision nor the bespeaks caution doctrine are applicable to statements of historical fact."). Thus, references to concrete rates of Sensei sales and user activity would not be immune. However, where Defendants gave projections such as "none of us have a crystal ball, but we feel very confident that given the pipeline . . . we're going to have a very reason able [sic] 2009" these would fall within the

6

Case Number 5:09-cv-05094-JF (HRL)
ORDER GRANTING MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT WITH LEAVE TO AMEND
(JFLC1)

forward-looking statements contemplated by the safe harbor provision. SCAC ¶ 193.

Whether or not the PSLRA affords protection to Defendants, no statement is actionable unless it is alleged to have been made with actual knowledge of its falsity. 15 U.S.C. § 78u-5(c)(1)(B). Plaintiffs cannot rely on "[a] series of conclusory allegations that Defendants knew or recklessly disregarded the falsity of their statements." *In re Jones Soda Co. Sec. Litig.*, 393 Fed. Appx. 507, 509 (9th Cir. 2010). For the reasons discussed below, Plaintiffs have not pled sufficient facts to show that the alleged misstatements were made with the requisite knowledge.

### 2. Scienter

"Scienter is the 'mental state embracing intent to deceive, manipulate, or defraud.'" *SEC v. Todd, et al.*, 642 F.3d 1207, 1215 (9th Cir. 2011) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976)). "Reckless conduct may also constitute scienter." *Id.* (citing *SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001)). When analyzing scienter in connection with § 10(b) violations, courts in the Ninth Circuit must conduct a dual inquiry in accordance with the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007). *See Zucco*, 552 F.3d at 992. First, courts must "determine whether any of the plaintiff's allegations, standing alone, are sufficient to create a strong inference of scienter; second, if no individual allegations are sufficient, [courts must]. . . conduct a 'holistic' review of the same allegations to determine whether the insufficient allegations combine to create a strong inference of intentional conduct or deliberate recklessness." *Id.*

#### a. Confidential Witnesses

Witness accounts can give rise to a strong inference of scienter if: (1) witnesses are "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged;" and (2) the statements attributed to witnesses are indicative of scienter. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015-16 (9th Cir. 2005). The Ninth Circuit concluded in *Zucco* that allegations made by witnesses who were not employed throughout the length of the relevant time period were

7

Case Number 5:09-cv-05094-JF (HRL)
ORDER GRANTING MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT WITH LEAVE TO AMEND
(JFLC1)

unreliable. *Id.*, 552 F.3d at 996-97; *See also Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1115 (N.D. Cal. 2009) ("[B]ecause CW 3 and CW 5 were not Yahoo! employees for most of the Class Period, the Court cannot rely on their statements to support claims of false revenue reporting for the entire Class Period.").

The SCAC sets forth accounts from twelve confidential witnesses ("CWs"). SCAC ¶¶ 34-45. However, only one of the twelve was employed by Hansen throughout the entirety of the Class Period. *See, e.g., Id.* at ¶¶ 37, 39 ("CW4 was employed by Hansen as a Clinical Account Manager from approximately April 2007 to approximately July 2009. . . CW6 was the senior director of the Company's Structural Heart Division from approximately December 2007 to approximately September 2008."). Moreover, none of the witnesses is alleged to have worked directly with revenue recognition. Several worked in sales and clinical accounts. *See, e.g., Id.* at ¶¶ 37-38, 40, 43-44. There at least is a colorable argument that none of these individuals would have been in a position to know whether the Individual Defendants knew or should have known of Hansen's improper recognition of revenue.

In addition, certain allegations rely on hearsay and even at face value fail to demonstrate that the Individual Defendants had knowledge of the alleged fraudulent activity. For example, several CWs claim to have "heard" that Hansen installed a Sensei system at Yale just before the end of the fourth quarter in 2008 and immediately uninstalled it after reporting revenue from the transaction. *See, e.g., Id.* at ¶¶ 37(g) ("CW 4 was told by his/her boss that Hansen had recorded revenue on a System installed at Yale . . . to make the revenue numbers for the quarter look good."). Although two CWs confirm that these events took place, neither of them indicates that the Individual Defendants were made aware of the problem. *Id.* ¶¶ 34, 40.

The most compelling allegations come from CW1, the only witness who was employed throughout the Class Period. CW1 allegedly worked with customer support and managed installations. *Id.* ¶ 34. As a part of these duties, CW1 was required to attend weekly installation meetings with Van Dick and Moll that centered on reports showing "customers line-by-line with columns for the purchase order, the installation dates, and the training dates." *Id.* at ¶ 34(a)(i).

8

Case Number 5:09-cv-05094-JF (HRL)
ORDER GRANTING MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT WITH LEAVE TO AMEND
(JFLC1)

CW1 goes on to state that during his tenure, there were several incomplete transactions for which revenue should have been deferred, but he does not claim specifically that this information was made known to Defendants in the line-by-line reports or that it was communicated to them verbally at the weekly meetings. *Id.* at ¶¶ 34(e)-(p). CW1 states only that "catheter sales generally would be talked about as much as System sales in the installation and sales meetings;" but this does not account for the problem outlined in the Restatement, which is that Defendants were receiving false information and incomplete data on sales. *Id.* at ¶ 34(q). Perhaps Plaintiffs are claiming that the lack of catheter sales to Sensei purchasers should have alerted Defendants to the reality that a large number of Sensei systems were not in use–the implication being that users would need additional catheter supplies. However, while this might be suggestive of willful ignorance on Defendants' part, the argument is entirely circumstantial and does not support a strong inference of scienter.

### b.  Core Operations

A defendant's knowledge of core business operations may satisfy the PSLRA scienter requirement if it is alleged that the defendant "had actual access to the disputed information . . . or where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008).

Here, Plaintiffs allege that the Individual Defendants were involved heavily in Hansen's daily operations and admitted as much on several occasions. Restani, the Chief Operating Officer, allegedly stated that Hansen had "a pipeline of opportunity" that Defendants "mind[ed] constantly every day." SCAC ¶ 71. And, Chief Executive Officer Moll boasted that Defendants "study" Sensei utilization because they "want to be all over that" in order to determine how to realize full utilization more quickly. *Id.* ¶ 157.

Plaintiffs contend that at the very least Defendants were deliberately reckless in not knowing of Hansen's non-compliance with its own revenue recognition policy. However, the facts alleged in the SCAC depict a situation more akin to that in *Zucco*, where corporate officers'

9

alleged access to manipulated accounting data did not "support the inference that management was in a position to know that such data was being manipulated." 552 F.3d at 1000-01.

Plaintiffs also argue that Defendants should have been aware of improper channel stuffing.[4]  They make numerous allegations, many of which come from the CWs, that Hansen pressured sales before the close of each quarter.  *See, e.g.,* SCAC ¶¶ 37, 42.  Plaintiffs assert that consistent spikes in quarter-end sales and the uninstallation of the Yale system one week after it was installed should have put the Individual Defendants on notice that Hansen was engaging in this illegal practice.  However, "there is nothing inherently improper in pressing for sales to be made earlier than in the normal course."  *Greebel v. FTP Software*, 194 F.3d 185, 202-03 (1st Cir. 1999); *Broudo v. Dura Pharms., Inc.*, 339 F.3d 933, 940 (9th Cir. 2003), *rev'd on other grounds by* 544 U.S. 336 (2005).  Additionally, the SCAC does not plead with particularity that Defendants were aware of the alleged uninstallation at Yale.

### c.  Magnitude of the Restatement and GAAP Violations

Plaintiffs claim that Hansen's improper recognition of revenue on twenty-four of fifty-nine Sensei systems sold over seven reporting periods is sufficient to establish scienter.  *See* SCAC ¶ 299.  As the Ninth Circuit reiterated recently in *Todd*, 642 F.3d at 1218, while GAAP violations generally are not probative of scienter, "significant violations of GAAP, taking place over an extended period of time, give rise to a strong inference of scienter."  *Batwin v. Occam Networks, Inc.*, No. C 07-2750, 2008 WL 2676364, at *13 (C.D. Cal. July 1, 2008).  Indeed, courts have found scienter where "no accountant 'would have made the same decisions if confronted with the same facts.'"  *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1205-06 (D. Ariz. 2009) (quoting *In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 628 (9th Cir. 1994)).  However, it is not apparent from the specific facts alleged in the SCAC that the accounting mistakes made by Hansen here were so egregious that the Individual Defendants

---

[4] The term "channel stuffing" refers to the improper recording of sales in one quarter that is later reversed–and revenues reduced–upon the customer's return of a product it could not sell or use and never had any intention of keeping.  Mot. at 16.

must have been aware of them. This especially is true in light of the fact that Hansen's internal investigation found that the accountants had been given incorrect information. *See* SCAC ¶ 296 ("The audit committee's investigation determined that information was withheld from the Company's accounting department and independent auditors. . .").

### d. SOX Certifications

Certifications made pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), 15 U.S.C. § 7201, *et seq.*, can raise an inference of scienter "if the person signing the certification was severely reckless in certifying the accuracy of the financial statements." *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736, 747 (9th Cir. 2008). Moll and Van Dick signed numerous SOX certifications attesting to the strength of Hansen's financial condition and the effectiveness of Hansen's internal controls. *See, e.g.,* SCAC ¶¶ 30, 31, 58. However, *Glazer* cautions that if courts were to rely solely on SOX certifications, "scienter would be established in every case where there was an accounting error . . . thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." 549 F.3d at 747. The facts alleged in the SCAC do not demonstrate that Defendants were aware of improper revenue recognition at the time the SOX certifications were made. The fact that Defendants acknowledged in the Restatement that certain revenue should have been deferred does not indicate that they were withholding this information from investors.

### e. Equity Offerings

Plaintiffs claim that Defendants' decision to conduct two public equity offerings during the Class Period shows a motivation to raise capital through artificial means. In April 2008 and April 2009, Defendants completed two public offerings each of which earned the company more than $30 million. SCAC ¶¶ 320-21. Although Plaintiffs question the timing of the offerings, alleging that the April 2008 offering came on the heels of Hansen's first overstated financial results and that the April 2009 offering was made just months before Hansen announced the Restatement, their allegations do not establish scienter. It is clear that in the Ninth Circuit private securities plaintiffs cannot aver intent in general terms of mere "motive and opportunity."

11

Case Number 5:09-cv-05094-JF (HRL)
ORDER GRANTING MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT WITH LEAVE TO AMEND
(JFLC1)

*South Ferry*, 542 F.3d at 782 (quoting *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 979 (9th Cir. 1999)); *See also In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1087 (N.D. Cal. 2003) ("[A]llegations of a motive to present better financial statements to secure credit or to engage in similar business activities are insufficient to establish a strong inference of scienter.").

### f.   Totality of the Allegations

As indicated above, "*Tellabs* permits a series of less precise allegations to be read together to meet the PSLRA requirement." *South Ferry*, 542 F.3d at 784 (citing 551 U.S. 308 (2007)). However, "[e]ven if a set of allegations may create an inference of scienter greater than the sum of its parts, it must still be at least as compelling as an alternative innocent explanation." *Zucco*, 552 F.3d at 1006. Despite the length of the SCAC, Plaintiffs' allegations taken together do not preclude the possibility that Defendants were unaware of the inflated revenue because they were provided with false information. Plaintiffs have laid a foundation for their 10(b) claim, but additional specificity is needed to show that Defendants acted with the requisite mental state. Because the Court concludes that Plaintiffs have not alleged scienter, it need not address the remaining claim requirements.

**B.   Section 20(a) Claim**

Plaintiffs assert that Defendants acted as control persons within the meaning of § 20(a) of the Exchange Act. 15 U.S.C. § 78t(a). Under § 20(a), "a defendant may be liable for securities violations if (1) there is a violation of the Act and (2) the defendant directly or indirectly controls any person liable for the violation." *Todd*, 642 F.3d at 1223 (citing *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)).[5] Because no securities fraud claim has been stated, Plaintiffs' 20(a) claim also is subject to dismissal.

### IV.  ORDER

Good cause therefor appearing, the motion to dismiss is GRANTED, WITH LEAVE TO AMEND. Defendants' request for judicial notice is granted as to the Statement of Position

---

[5] The definition of the term "person" under the Act encompasses a company. 15 U.S.C. § 78c(a)(9).

12

Case Number 5:09-cv-05094-JF (HRL)
ORDER GRANTING MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT WITH LEAVE TO AMEND
(JFLC1)

identified in Ex. 24.[6]  Any amended pleading shall be filed within thirty (30) days from the date of this Order.

**IT IS SO ORDERED.**

DATED: August 25, 2011

_____
JEREMY FOGEL
United States District Judge

---

[6] The Court otherwise has not relied upon the parties' requests for judicial notice in reaching the conclusions herein.