1   BINGHAM MCCUTCHEN LLP
    David M. Balabanian (SBN 37368)
2   david.balabanian@bingham.com
    Charlene S. Shimada (SBN 91407)
3   charlene.shimada@bingham.com
    John D. Pernick (SBN 155468)
4   john.pernick@bingham.com
    Lucy Wang (SBN 257771)
5   lucy.wang@bingham.com
    Three Embarcadero Center
6   San Francisco, CA 94111-4067
    Telephone:  415.393.2000
7   Facsimile:   415.393.2286

8   Attorneys for Defendants
    Hansen Medical, Inc., Frederic H. Moll,
9   Steven M. Van Dick and Gary C. Restani

10

11                          UNITED STATES DISTRICT COURT

12                        NORTHERN DISTRICT OF CALIFORNIA

13                                OAKLAND DIVISION

14

15  ROBERT CURRY, Individually and on behalf of       Case No. 09-cv-5094 CW
    all others similarly situated,
16                                                     **DEFENDANTS HANSEN MEDICAL,**
                            Plaintiff,                 **INC., FREDERIC H. MOLL,**
17                                                     **STEVEN M. VAN DICK AND GARY**
    v.                                                 **C. RESTANI'S NOTICE OF**
18                                                     **MOTION AND MOTION TO**
    HANSEN MEDICAL INC., FREDERIC H.                   **DISMISS THE THIRD**
    MOLL, STEVEN M. VAN DICK, GARY C.                  **CONSOLIDATED AMENDED**
19  RESTANI and CHRISTOPHER SELLS,                     **COMPLAINT; MEMORANDUM OF**
                                                       **POINTS AND AUTHORITIES IN**
20                          Defendants.                **SUPPORT THEREOF**

21

22                                                     Date:          April 19, 2012
                                                       Time:          2:00 p.m.
23                                                     Courtroom:   2
                                                       Judge:         Hon. Claudia Wilken
24

25

26

27

28

1

## TABLE OF CONTENTS

2
Page

3   NOTICE OF MOTION AND MOTION ........................................................................ 1

4   ISSUES TO BE DECIDED ......................................................................................... 1

5   MEMORANDUM OF POINTS AND AUTHORITIES ............................................... 2

    I.      INTRODUCTION ........................................................................................... 2

6   II.     STATEMENT OF FACTS AND ALLEGATIONS .......................................... 3

7           A.      Hansen Medical, Inc. ........................................................................... 3

8           B.      Revenue Recognition Policy ............................................................... 3

            C.      Internal Investigation and Restatement ............................................... 3

9           D.      Securities Class Action ....................................................................... 4

10  III.    ARGUMENT ................................................................................................... 5

11          A.      Plaintiffs' Claims Regarding the Restatement Fail for Lack of Scienter .............. 6

                    1.      Plaintiffs Fail to Plead Facts Establishing Corporate Scienter .................. 6

12                  2.      Plaintiffs Fail to Plead Facts Supporting a Strong Inference of
                            Scienter for Moll, Van Dick or Restani ...................................... 7

13                          a.      Confidential Witness Statements Do Not Support Scienter .......... 8

14                                  (1)     Unspecified Confidential Witnesses ................................. 8

15                                  (2)     CW1, CW2 and CW3 ......................................................... 8

16                          b.      Allegations Regarding Domestic Sales Do Not Support
                                    Scienter .......................................................................... 10

17                                  (1)     SEC Complaint Against Sells ......................................... 10

                                    (2)     Internal Meetings and Reports ....................................... 11

18                                  (3)     Catheter Sales and Utilization ....................................... 13

19                          c.      Allegations Regarding International Sales Do Not Support
                                    Scienter .......................................................................... 13

20                                  (1)     Installation ...................................................................... 14

21                                  (2)     Physician Training .......................................................... 15

22                                  (3)     Clinical Support ............................................................. 16

                                    (4)     "Channel Stuffing" ......................................................... 17

23                  3.      Plaintiffs Fail to Allege Any Basis for Inferring Scienter .................... 18

24                          a.      Restatement ..................................................................... 18

25                          b.      Core Operations ............................................................... 18

                            c.      Executive Departures ........................................................ 19

26                          d.      Equity Offerings............................................................... 20

27                          e.      SOX Certifications ........................................................... 20

28

i

1

TABLE OF CONTENTS<br>(continued)

2
<u>Page</u>

3          4.      Totality of Allegations Do Not Raise a Strong Inference of
                   Scienter .................................................................................................... 21

4   B.      Plaintiffs' Other Claims Fail for Lack of Falsity and Scienter ........................... 21

5   C.      Plaintiffs Cannot Establish Loss Causation for Stock Price Drops Prior to
            the Announcement of the Restatement ................................................................. 23

6   D.      Plaintiffs' Section 20(a) Claim Should Be Dismissed ........................................ 25

7   IV.   CONCLUSION ............................................................................................................. 25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Allstate Life Ins. Co. v. Robert W. Baird & Co.*
   756 F. Supp. 2d 1113 (D. Ariz. 2010) ................................................................. 13

*Berson v. Applied Signal Tech., Inc.*
   527 F.3d 982 (9th Cir. 2008) ............................................................................. 19

*Brodsky v. Yahoo! Inc.*
   630 F. Supp. 2d 1104 (N.D. Cal. 2009) ................................................. 6, 8, 18, 22

*City of Westland Police & Fire Ret. Sys. v. Sonic Solutions*
   No. C 07-05111 CW, 2009 WL 942182 (N.D. Cal. Apr. 6, 2009) ........................ 21

*DSAM Global Value Fund v. Altris Software, Inc.*
   288 F.3d 385 (9th Cir. 2002) ............................................................................. 18

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*
   353 F.3d 1125 (9th Cir. 2004) ........................................................................... 23

*Glazer Capital Management, LP v. Magistri*
   549 F.3d 736 (9th Cir. 2008) ............................................................................... 7

*In re Accuray, Inc. Sec. Litig.*
   757 F. Supp. 2d 936 (N.D. Cal. 2010) ..................................................... 8, 19, 22

*In re Apple Computer, Inc. Sec. Litig.*
   243 F. Supp. 2d 1012 (N.D. Cal. 2002) ........................................................... 7, 22

*In re Cadence Design Sys.*
   654 F. Supp. 2d 1037 (N.D. Cal. 2009) ............................................................. 20

*In re Calpine Corp. Sec. Litig.*
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) ............................................................. 20

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) ............................................................. 22

*In re Cutera Sec. Litig.*
   610 F.3d 1103 (9th Cir. 2010) ..................................................................... 21, 22

*In re Downey Sec. Litig.*
   No. CV 08-3261-JFW, 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ............ 24, 25

iii

*In re Hansen Natural Corp. Sec. Litig.*
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ............................................................ 20

*In re Immersion Corp. Sec. Litig.*
No. C 09-4073 MMC, 2011 WL 871650 (N.D. Cal. Mar. 11, 2011) .................... 9, 25

*In re Impac Mortg. Holdings, Inc. Sec. Litig.*
554 F. Supp. 2d 1083 (C.D. Cal. 2008) ............................................................ 22

*In re LeapFrog Enterprises, Inc. Sec. Litig.*
527 F. Supp. 2d 1033 (N.D. Cal. 2007) ............................................................ 24

*In re Medicis Pharm. Corp. Sec. Litig.*
689 F. Supp. 2d 1192 (D. Ariz. 2009) ............................................................ 8, 10

*In re Nvidia Corp. Sec. Litig.*
No. C 08-04260 RS, 2011 WL 4831192 (N.D. Cal. Oct. 12, 2011) ........................ 7

*In re PMI Group, Inc. Sec. Litig.*
No. C 08-1405 SI, 2009 WL 1916934 (N.D. Cal. July 1, 2009) ........................... 19

*In re Rackable Systems, Inc. Sec. Litig.*
No. C 09-0222 CW, 2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) .................. 10, 19, 21, 22

*In re Read-Rite Corp. Sec. Litig.*
115 F. Supp. 2d 1181 (N.D. Cal. 2000), *aff'd* 335 F.3d 843 ............................ 20

*In re Redback Networks, Inc. Sec. Litig.*
No. C 03-5642 JF, 2007 WL 963958 (N.D. Cal. Mar. 30, 2007) ......................... 24

*In re Sierra Wireless, Inc., Sec. Litig.*
482 F. Supp. 2d 365 (S.D.N.Y. 2007) ............................................................ 17

*In re Silicon Graphics Sec. Litig.*
183 F.3d 970 (9th Cir. 1999) ............................................................ 21

*In re Vantive Corp. Sec. Litig.*
283 F.3d 1079 (9th Cir. 2002) ............................................................ 14

*In re Versant Object Tech. Corp.*
No. C 98-00299 CW, 2001 WL 34065027 (N.D. Cal. Dec. 4, 2001) ..................... 12

*Janus Capital Group, Inc. v. First Derivative Traders*
131 S. Ct. 2296 (2011) ............................................................ 6

*Lentell v. Merrill Lynch & Co., Inc.*
396 F.3d 161 (2d Cir. 2005) ............................................................ 24

iv

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*
  540 F.3d 1049 (9th Cir. 2008) ........................................................................ 24

*Plichta v. Sunpower Corp.*
  790 F. Supp. 2d 1012 (N.D. Cal. 2011) .................................................... 7, 19

*Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*
  No. 10-CV-03451-LHK, 2011 WL 3501733 (N.D. Cal. Aug. 10, 2011) ............................... 22

*Powell v. Idacorp, Inc.*
  No. CV04-249-S-EJL, 2006 WL 851116 (D. Idaho Mar. 29, 2006) ...................................... 24

*Skechers U.S.A. Sec. Litig. v. Skechers U.S.A., Inc.*
  273 Fed. Appx. 626 (9th Cir. 2008) ................................................................. 18

*South Ferry LP, #2 v. Killinger*
  542 F.3d 776 (9th Cir. 2008) ........................................................................ 19

*Weiss v. Amkor Tech., Inc.*
  527 F. Supp. 2d 938 (D. Ariz. 2007) .............................................................. 24

*Wozniak v. Align Tech., Inc.*
  No. C 09-3671 MMC, 2011 WL 2269418 (N.D. Cal. June 8, 2011) ...................................... 12

*Zucco Partners, LLC v. Digimarc Corp.*
  552 F.3d 981 (9th Cir. 2009) ................................................................. passim

**FEDERAL STATUTES**

15 U.S.C. § 78u-5(c) ........................................................................ 21

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b) ...................................................... 1, 5

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 1

1                             **NOTICE OF MOTION AND MOTION**

2         NOTICE IS HEREBY GIVEN that on April 19, 2012, at 2:00 p.m., in the Courtroom of

3 the Honorable Claudia Wilken, United States Courthouse, Courtroom 2, 4th Floor, 1301 Clay

4 Street, Oakland, California, Defendants Hansen Medical, Inc. ("Hansen" or the "Company"),

5 Frederic H. Moll, Steven M. Van Dick and Gary C. Restani will move this Court to dismiss the

6 Third Consolidated Amended Complaint for violations of Sections 10(b) and 20(a) of the

7 Securities Exchange Act of 1934.

8         This motion is brought pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6),

9 and the Private Securities Litigation Reform Act of 1995.  This motion is based on this Notice of

10 Motion and Motion, the Memorandum of Points and Authorities, Request for Judicial Notice and

11 Declaration of Lucy Wang, the argument of counsel, all pleadings, records and papers on file

12 herein and such other matters that may be presented to the Court.

13                                    **ISSUES TO BE DECIDED**

14         1.  Whether Plaintiffs' Section 10(b) claim should be dismissed because: (a) Plaintiffs

15 failed to plead particularized facts creating a strong inference of scienter on the part of Hansen,

16 Moll, Van Dick or Restani; (b) Plaintiffs failed to state a claim for alleged misstatements

17 unrelated to the restatement; and (c) Plaintiffs cannot establish loss causation for stock price

18 drops prior to the announcement of the restatement.

19         2.  Whether Plaintiffs' Section 20(a) claim should be dismissed because: (a) Plaintiffs

20 failed to state an underlying Section 10(b) claim; and (b) Plaintiffs failed to allege that Moll, Van

21 Dick or Restani were "control persons" with regard to the fraudulent conduct alleged in the

22 primary violation.

23

24

25

26

27

28

1                           **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.      INTRODUCTION**

3         Plaintiffs' Third Consolidated Amended Complaint fails to cure the fatal deficiency

4  Judge Jeremy Fogel identified in dismissing the Second Consolidated Amended Complaint

5  ("SCAC"), namely, Plaintiffs have not alleged facts showing that Defendants acted with scienter.

6  As the Court ruled, the SCAC did not establish that Moll, Van Dick, Restani or Hansen had

7  contemporaneous knowledge of the revenue recognition errors subsequently corrected in the

8  Company's restatement.  *See* Order Granting Motion to Dismiss Second Consolidated Amended

9  Complaint with Leave to Amend ("Order") (Docket. No. 59).  "Despite the length of the SCAC,"

10  the Court found that "Plaintiffs' allegations taken together do not preclude the possibility that

11  Defendants were unaware of the inflated revenue because they were provided with false

12  information."  *Id.* at 12.

13         Plaintiffs' ***Third*** Consolidated Amended Complaint ("TCAC") retains the identical flaw.

14  Lacking any means to allege scienter as to Moll, Van Dick and Restani, Plaintiffs attempt to

15  impugn Hansen by naming former sales manager, Christopher Sells, as an Individual Defendant.

16  Based on the complaint in *SEC v. Sells* (N.D. Cal. No. 11-04941) ("SEC Complaint"), Plaintiffs

17  allege that Sells circumvented Hansen's revenue recognition policy.  Plaintiffs, however, do not

18  and cannot allege that Moll, Van Dick or Restani, or anyone making financial statements on

19  Hansen's behalf, participated in, or even knew of, the alleged fraud.  To the contrary, the SEC

20  Complaint and Plaintiffs' own allegations only affirm Judge Fogel's conclusion that the

21  circumstances of the restatement do not "support the inference that management was in a

22  position to know that [accounting] data was being manipulated."  Order at 9-10 (*quoting Zucco*

23  *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000-01 (9th Cir. 2009)).

24         As for Plaintiffs' miscellaneous allegations unrelated to the restatement, in addition to

25  failing for a lack of scienter, these claims fail for a lack of falsity and loss causation.

26         Plaintiffs have not alleged claims against these defendants with the requisite specificity,

27  and cannot do so.  Consequently, the claims against Moll, Van Dick, Restani and Hansen should

28  be dismissed, with prejudice.

1    II.    STATEMENT OF FACTS AND ALLEGATIONS

2        A.    Hansen Medical, Inc.

3        Hansen designs, manufactures and sells medical robotics designed for accurate

4    positioning, manipulation and stable control of catheters and catheter-based technologies.

5    Hansen's revenues are primarily derived from the sale of the Sensei system, a robotic navigation

6    system that enables physicians to navigate flexible catheters.  *See* Request for Judicial Notice in

7    Support of Motion to Dismiss Third Consolidated Amended Complaint ("RJN"), Ex. 1 at 3

8    (Hansen's FY09 10-K).  Moll is Hansen's former Chief Executive Officer.  Van Dick is

9    Hansen's former Chief Financial Officer.  Restani is Hansen's former Chief Operating Officer.

10   TCAC ¶ 1 n.1

11       B.    Revenue Recognition Policy

12       The Sensei system is a combined hardware and software device.  Consequently, Hansen's

13   revenue recognition policy for Sensei sales is based on American Institute of Certified Public

14   Accountants, Statement of Position 97-2, *Software Revenue Recognition* (SOP 97-2).  *See* RJN,

15   Ex. 2 at 2 (Hansen's October 19, 2009 8-K).

16       For domestic customers, Hansen sells Sensei systems through a direct sales force.  *See*

17   RJN, Ex. 3 at 6 (Hansen's FY07 10-K).  A large percentage of domestic sales contracts include

18   installation and physician training.  As those services are not deemed to be perfunctory, under

19   Hansen's revenue recognition policy, Hansen deferred system revenues until installation and

20   physician training were completed.  *See* RJN, Ex. 2 at 2 (Hansen's October 19, 2009 8-K).  For

21   international customers, Hansen sells Sensei systems through a combination of a direct sales

22   force and distributors.  For "Tier 1" distributors that could independently provide installation and

23   physician training, Hansen recognized revenue upon shipment of the system.  For "Tier 2"

24   distributors without that ability, Hansen deferred revenue until installation and physician training

25   were completed.  *Id.*; *see also* TCAC ¶ 37.

26       C.    Internal Investigation and Restatement

27       In August 2009, Hansen received an anonymous "whistleblower" report alleging that an

28   irregularity with respect to a single Sensei system transaction resulted in improper revenue

3

1   recognition in Q408.  *See* RJN, Ex. 2 at 2 (Hansen's October 19, 2009 8-K).  The Audit

2   Committee of Hansen's Board of Directors, with the assistance of independent outside counsel,

3   undertook an investigation into the allegation and a review of Hansen's historical revenue

4   recognition practices.  *Id.*; *see also* RJN, Ex. 4 at 2 (Hansen's November 10, 2009 8-K).

5          The investigation determined that information on certain transactions was withheld from

6   Hansen's finance department and independent auditors and that documents related to certain

7   revenue transactions were falsified.  *See* RJN, Ex. 5 at 81 (Hansen's FY08 10-K/A).  This led the

8   finance department and independent auditors to receive incomplete information regarding certain

9   temporary installations, unfulfilled training obligations and undisclosed side arrangements.  *Id.*

10  In addition, the investigation determined that there were questions regarding the ability of

11  Hansen's distributors to independently provide installation and physician training.  *Id.*  As a

12  result, in some instances revenue was recognized prior to completion of all of the elements

13  required under Hansen's revenue recognition policy.  *Id.*  All of the irregularities occurred

14  outside of the finance department.  *Id.*

15         Hansen made its initial announcement regarding the findings of the Audit Committee's

16  investigation on October 19, 2009.  On November 16, 2009, it filed restated financial statements

17  to reflect the proper dates for recognition of revenue for certain Sensei sales.  *See* RJN, Ex. 5

18  (Hansen's FY08 10-K/A).  At the time of the restatement, Hansen had already received full

19  payment for all but one of the systems shipped during the restated period.  *Id.*; *see* RJN Ex., 2

20  (Hansen's October 19, 2009 8-K).  Although the restatement impacted previously-reported

21  revenue, it was a cash-neutral event and had no impact on previously-reported cash flow.  RJN,

22  Ex. 6 (November 17, 2009 Earnings Call).

23         **D.     Securities Class Action**

24         Immediately upon Hansen's announcement of the internal investigation, this purported

25  securities class action was filed.  *See* Complaint for Violations of the Federal Securities Laws

26  (Docket No. 1).  According to the original complaint, the announcement revealed a "[t]ruth"

27  Hansen had been intentionally concealing in prior statements.  *Id.* ¶ 31.  After the issuance of the

28  restatement, Plaintiffs filed a Corrected Consolidated Amended Class Action Complaint for

1   Violations of the Federal Securities Laws (Docket No. 23).  In the Consolidated Amended

2   Complaint, Plaintiffs attempted to expand Hansen's potential exposure by alleging the "[t]ruth"

3   had already been "partially revealed" in numerous prior statements.  *Id.* ¶ 340.  Thereafter,

4   Plaintiffs made further amendments in the Second Consolidated Amended Class Action

5   Complaint for Violations of the Federal Securities Laws (Docket No. 28).  In particular, they

6   attempted to bolster their claims with statements from confidential witnesses and miscellaneous

7   allegations unrelated to the restatement.

8         On August 25, 2011, the Court dismissed the SCAC in its entirety.  The Court concluded

9   that none of the allegations in the two-hundred page complaint supported a strong inference that

10  Moll, Van Dick or Restani had knowledge of the alleged fraudulent activity.  Order at 12.  First,

11  the Court rejected Plaintiffs' confidential witnesses' statements, noting that "none of these

12  individuals would have been in a position to know whether [Moll, Van Dick or Restani] knew or

13  should have known of Hansen's improper recognition of revenue" and, in any event, the hearsay

14  allegations "even at face value fail to demonstrate . . . knowledge of the alleged fraudulent

15  activity."  *Id.* at 8.  Second, the Court rejected Plaintiffs' argument that Moll, Van Dick and

16  Restani should have known about the revenue recognition errors based on their understanding of

17  Hansen's core business operations.  *Id.* at 9.  Specifically, the Court rejected the suggestion that

18  Hansen's routine sales practices "should have put [Moll, Van Dick or Restani] on notice that

19  Hansen was engaging in [improper revenue recognition]."  *Id*. at 10.  Rather, the Court found

20  that Plaintiffs' allegations depicted a situation where corporate officers were not in a position to

21  know that the Company's accounting data was being manipulated.  *Id.* at 9-10.  Finally, the

22  Court rejected Plaintiffs' generic allegations that the restatement, certifications pursuant to

23  Sarbanes-Oxley Act of 2002 ("SOX") and public equity offerings supported a strong inference of

24  scienter.  Consequently, the Court ruled that Plaintiffs failed to allege scienter as to any alleged

25  misrepresentation.

26  **III.    ARGUMENT**

27         Plaintiffs' Third Consolidated Amended Complaint once again fails to satisfy the

28  heightened pleading standards of Federal Rule of Civil Procedure 9(b) and the PSLRA.  The

5

1   primary addition to the TCAC is the naming of Christopher Sells as an Individual Defendant.

2   Sells, a former employee who managed Hansen's commercial operations department from June

3   2008 to October 2009, is the subject of a recent SEC complaint.  TCAC ¶ 23.  Mimicking the

4   SEC's allegations, Plaintiffs allege that Sells failed to disclose information regarding four

5   restated domestic transactions to Hansen's finance department and independent auditors, which

6   led to premature recognition of revenue as to those transactions.  *Id.* ¶¶ 122-55.  Yet, even if the

7   SEC's allegations were true, they are irrelevant.  As Plaintiffs acknowledge, Sells was not a

8   member of Hansen's finance group, did not sign financial statements or make any public

9   statements on behalf of Hansen.  Therefore, Sells's purported bad acts cannot form the basis of a

10   securities fraud claim against Hansen.  Moreover, Plaintiffs do not allege facts demonstrating

11   that Moll, Van Dick or Restani knew Sells was failing to communicate information relevant to

12   revenue recognition.  Therefore, the allegations regarding Sells cannot revive Plaintiffs' claims

13   against Moll, Van Dick, Restani or Hansen.

14         Other than adding Sells, the TCAC merely repackages the insufficient allegations from

15   the prior three complaints.  As the Court has already ruled, however, Plaintiffs' speculation as to

16   what Moll, Van Dick and Restani *could* have known about restated transactions does not support

17   an inference of scienter.  In addition, Plaintiffs' claims unrelated to the restated transactions also

18   fail for lack of falsity and loss causation.  As this is Plaintiffs' fourth failed attempt to plead a

19   fraud claim, the Court should dismiss the TCAC with prejudice as to Hansen, Moll, Van Dick

20   and Restani.  *See Zucco*, 552 F.3d at 1007; *Brodsky v. Yahoo! Inc*., 630 F. Supp. 2d 1104, 1119

21   (N.D. Cal. 2009) (dismissing amended complaint with prejudice).

22       **A.**      **Plaintiffs' Claims Regarding the Restatement Fail for Lack of Scienter**

23              **1.**      **Plaintiffs Fail to Plead Facts Establishing Corporate Scienter**

24         Plaintiffs fail to allege scienter as to Hansen.  As the Supreme Court recently affirmed in

25   *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2299 (2011), Rule 10b-5

26   prohibits *making* misstatements in connection with the purchase or sale of securities.  The *maker*

27   of the statement is the individual or entity "with ultimate authority over the statement, including

28   its content and whether and how to communicate it."  *Id.* at 2302.  Because Plaintiffs fail to plead

1   scienter with respect to the individuals who *made* statements on behalf of Hansen, *i.e.*,

2   individuals with ultimate authority over the Company's financial statements and public

3   disclosures, Plaintiffs also fail to plead scienter as to Hansen.  *See infra* Section III.A.2.

4        In particular, Plaintiffs cannot state a claim against Hansen based on allegations about

5   Sells.  Sells argues in his Motion to Dismiss that the TCAC fails to establish he had the requisite

6   scienter.  But, even if Plaintiffs could establish scienter as to Sells, his scienter would not be

7   "attributable" to Hansen.  TCAC ¶ 375.  As the Ninth Circuit stated, "[t]he mere fact that

8   someone at [the Company] had knowledge . . . is not sufficient."  *Glazer Capital Management,*

9   *LP v. Magistri*, 549 F.3d 736, 749 (9th Cir. 2008); *see also Plichta v. Sunpower Corp.*, 790 F.

10  Supp. 2d 1012, 1021 (N.D. Cal. 2011) ("[D]eliberate misrepresentation[s] at some level within

11  the company . . . simply is not enough to give rise to a strong inference of scienter on the part of

12  the [Company]").  Rather, Plaintiffs must plead that a corporate officer *making* the statement on

13  behalf of the corporation acted with the requisite scienter, "*i.e.*, kn[ew] that the statement is false,

14  or [wa]s at least deliberately reckless as to its falsity, at the time that he or she *ma[de]* the

15  statement."  *In re Apple Computer, Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002)

16  (emphasis added).

17       Here, Sells did not sign any financial statements nor make any alleged misstatements on

18  behalf of Hansen.  Nor do Plaintiffs allege that Sells shared his alleged knowledge with anyone

19  who did.  Therefore, Plaintiffs' attempt to show that "a different executive" had relevant

20  knowledge "do[es] nothing to resuscitate [the prior] claims" against Hansen.  *Glazer*, 549 F.3d at

21  745; *Apple*, 243 F. Supp. 2d at 1023; *see also In re Nvidia Corp. Sec. Litig.*, No. C 08-04260 RS,

22  2011 WL 4831192, at *11 (N.D. Cal. Oct. 12, 2011) (rejecting claim of "collective[]" corporate

23  scienter).

24              **2.    Plaintiffs Fail to Plead Facts Supporting a Strong Inference of**

25                     **Scienter for Moll, Van Dick or Restani**

26       Plaintiffs fail to allege scienter as to Moll, Van Dick or Restani.  Neither the general

27  allegations of confidential witnesses nor any allegations regarding particular restated transactions

28

1  demonstrate that Moll, Van Dick or Restani had contemporaneous knowledge of the revenue

2  recognition errors disclosed in the restatement.

3              a.       **Confidential Witness Statements Do Not Support Scienter**

4          Plaintiffs continue to rely on statements from confidential witnesses (1) who are not

5  described with sufficient particularity to support the probability that a person in the position

6  occupied by the source would possess the information alleged, and (2) whose statements are not

7  indicative of scienter.  *See* Order at 7 (*citing In re Daou Sys., Inc*., 411 F.3d 1006, 1015-16 (9th

8  Cir. 2005)).  As the Court has already ruled, such unreliable and irrelevant statements do not

9  support a strong inference of scienter.  *Id.* at 7-9.

10             (1)      **Unspecified Confidential Witnesses**

11         First, the TCAC is replete with improper references to unspecified confidential witnesses,

12  sometimes identified only as "former employees."  TCAC ¶ 60.  While the TCAC does not

13  attempt to describe these witnesses with sufficient particularity, it is apparent that many are

14  reincarnates of witnesses from the SCAC.  *Compare* allegations at TCAC ¶¶ 34 n.7, 60, 63 *with*

15  confidential witness descriptions at SCAC ¶¶ 37 (CW4), 41 (CW8), 38 (CW5).  Even if these

16  witnesses were properly identified, the Court has already ruled that they were not employed

17  throughout the Class Period, did not work directly with revenue recognition, relied on unreliable

18  hearsay and, therefore, their allegations do not support a strong inference of scienter.  *See* Order

19  at 8-9; *see also In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1210-13 (D. Ariz.

20  2009) (rejecting confidential witness statements for failing to allege detailed facts required to

21  establish personal knowledge).

22             (2)      **CW1, CW2 and CW3**

23         Second, the only witnesses described in any detail (CW1, CW2, CW3) fail to allege facts

24  indicative of scienter.  As with the SCAC, "none of the witnesses is alleged to have worked

25  directly with revenue recognition."  Order at 8; *see also Brodsky,* 630 F. Supp. 2d at 1115.

26  Moreover, none of the witnesses reported directly to Moll, Van Dick or Restani or recalled any

27  specific interactions regarding any restated transaction.  TCAC ¶¶ 25-27; *see In re Accuray, Inc.*

28  *Sec. Litig*., 757 F. Supp. 2d 936, 949 (N.D. Cal. 2010).

1    Specifically, as to CW1, the TCAC merely repeats allegations the Court already rejected.

2  *See* Order at 8-9.  Consistent with the SCAC, CW1 alleges he was a Director of Customer

3  Support who "usually" participated in sales meetings and installation meetings.  TCAC ¶¶ 47,

4  50-51.  Moll, Van Dick and Restani allegedly attended some meetings and received certain "line-

5  by-line" customer reports.  *Id*. ¶¶ 47, 50-51.  As the Court previously noted, CW1 does not allege

6  that information regarding any incomplete transactions was made known to Moll, Van Dick or

7  Restani "in the line-by-line reports or that it was communicated to them verbally at the weekly

8  meetings."  Order at 9.  This omission is only more glaring in the TCAC.  According to the

9  TCAC, CW1 "personally" kept track of installation preparation and status and allegedly "shared

10  this information" with Moll and Van Dick during installation meetings.  TCAC ¶ 50.  But there

11  is no allegation that CW1 ever once "shared" with Moll or Van Dick information indicating that

12  an installation had not been fully performed.  *See In re Immersion Corp. Sec. Litig.*, No. C-09

13  4073 MMC, 2011 WL 871650, at *6 (N.D. Cal. Mar. 11, 2011) (rejecting scienter allegations

14  where witness does not allege he "sound[ed] the alarm" to anyone, let alone one of the

15  defendants).

16    Similarly, CW2 adds no specificity to Plaintiffs' allegations regarding sales meetings.  As

17  a former Sales Director for Central and Eastern Europe, CW2 acknowledges he understood Tier

18  1 distributors "had to install Systems on their own."  TCAC ¶ 37.  CW2 also alleges there were

19  instances in which Hansen "was required to provide the installation" for these distributors.  *Id.*

20  However, CW2 does not allege that he ever informed Moll, Van Dick or Restani that Hansen

21  was providing such assistance.  As with CW1, CW2 fails to allege a single meeting at which he

22  or any other person present raised concerns regarding the propriety of an installation or the

23  timing of revenue recognition.  *See Immersion*, 2011 WL 871650, at *6 (rejecting scienter

24  allegations where witness failed to allege that "he, or anyone else at such meetings, informed

25  [defendant] that revenue was being improperly booked").[1]

26  _____

27  [1] Allegations of CW2 are also unreliable as he was not employed throughout the Class Period.
    *See* Order at 7-8 (*citing Zucco*, 552 F.3d at 996-97 and *Brodsky*, 630 F. Supp. 2d at 1115).

28

1    Finally, CW3 provides no statements relevant to revenue recognition. A Sales Director,

2 CW3 cryptically states that "on occasions," he received calls from Van Dick "wanting to know

3 about the closure of deals." TCAC ¶ 27. CW3 does not allege when Van Dick called, which

4 deals Van Dick wanted to discuss, or what was discussed. Such vacuous allegations do not

5 support an inference of scienter. *See Medicis*, 689 F. Supp. 2d at 1210. Similarly deficient are

6 CW3's hearsay statements regarding former Hansen employee Jed Palmacci's descriptions of

7 conversations between Palmacci and Moll regarding Sells. Not only does CW3 have no personal

8 knowledge of what was said between Palmacci and Moll, nothing in those alleged discussions

9 related in any way to revenue recognition. *See* Order at 8 (rejecting hearsay allegations); *Zucco*,

10 552 F.3d at 997 (similar). As with CW1 and CW2, CW3 does not allege Moll, Van Dick or

11 Restani were exposed to facts evidencing improper revenue recognition. *See In re Rackable*

12 *Systems, Inc. Sec. Litig.*, No. C 09-0222 CW, 2010 WL 3447857, at *9 (N.D. Cal. Aug. 27,

13 2010).

14                    **b.      Allegations Regarding Domestic Sales Do Not Support Scienter**

15    Plaintiffs fail to allege that Moll, Van Dick and Restani had contemporaneous knowledge

16 of improper revenue recognition on sales to domestic customers. TCAC ¶¶ 156-97.

17 Incorporating the SEC Complaint, Plaintiffs allege that Sells failed to disclose information

18 regarding temporary installations, unfulfilled training obligations and undisclosed side

19 arrangements on four domestic transactions. *Id.* ¶¶ 122-55. Nonetheless, the SEC Complaint

20 and Plaintiffs' own exhibits consistently demonstrate that Moll, Van Dick and Restani were not

21 aware of such alleged fraud.[2]

22                            **(1)      SEC Complaint Against Sells**

23    The SEC Complaint does not support Plaintiffs' allegation of scienter as to Moll, Van

24 Dick or Restani. While the SEC alleges that Sells concealed information regarding premature

25    _____

26 [2] Plaintiffs also allege that Hansen improperly recognized revenue on three domestic sales in
   Q208. TCAC ¶¶ 120-21. These allegations are based solely on the allegation of CW1 and
27 unspecified confidential witnesses that these systems were placed in storage or removed. *Id.*
   Plaintiffs do not allege any confidential witnesses communicated such information to Hansen's
28 finance department, independent auditors, Moll, Van Dick or Restani.

1    revenue recognition, the SEC does not allege that Sells shared such information with Moll, Van

2    Dick or Restani.  *Id.* ¶¶ 122-55.  To the contrary, the SEC alleges that Hansen established

3    detailed procedures for documenting and reviewing revenue recognition requirements and that

4    Sells "circumvented" these procedures to make it appear that those requirements had been

5    fulfilled.  TCAC Ex. 1 ¶ 4.  In each instance, therefore, the SEC alleges that individuals making

6    the revenue recognition decisions and, ultimately, making financial statements on behalf of

7    Hansen, did not have contemporaneous knowledge of facts indicating revenue recognition was

8    premature.  *Id.* Ex. 1 ¶¶ 4, 31, 33, 48, 50, 58, 60, 71, 73.  Plaintiffs allege no facts to the contrary.

9                          **(2)    Internal Meetings and Reports**

10           Lacking any confidential witnesses who can demonstrate scienter, Plaintiffs claim that

11    Moll, Van Dick and Restani received "line-by-line" reports that informed them of improper

12    revenue recognition.  TCAC ¶¶ 47, 50-51.  The Court previously rejected such allegations

13    because Plaintiffs failed to allege that any information regarding incomplete transactions was

14    made known to Moll, Van Dick or Restani in the line-by-line reports.  Order at 9.  Plaintiffs'

15    attempt to overcome this deficiency by attaching two exemplar reports fails because the reports

16    do not contain any such information.  Rather, the exhibits actually demonstrate Hansen's policy

17    of verifying revenue recognition requirements.  As documented in the exhibits, the only domestic

18    transactions marked for recognizing revenue are those for which Hansen had already received

19    documentation confirming both installation and physician training.[3]

20           In the absence of actual documents supporting their claims, Plaintiffs resort to

21    speculation.  For example, as Moll explained, the internal investigation uncovered situations in

22    which the physician initially trained was not the intended primary user for the hospital, although

23    he had privileges to conduct procedures there.  TCAC ¶ 184.  Based on this explanation,

24    Plaintiffs assume that Hansen clinical personnel *would* not have submitted a training completion

25    _____

26    [3] Plaintiffs note that Exhibit 4 shows the "Installation Plan Approved" status as "In Process" and
     the "Customer [I]nvoice [C]reated" status as blank for certain transactions.  TCAC ¶ 171.
27    However, Plaintiffs do not allege that an installation plan or customer invoice were requirements
     for revenue recognition or that any transactions were restated on those bases.
28

1   form in such instances and, therefore, the line-by-line report *would* not have shown physician

2   training as complete. *Id.* ¶¶ 186-87. But Plaintiffs do not provide any factual allegations as to

3   (1) whether training completion forms were submitted in such circumstances, (2) whether such

4   line-by-line report was ever prepared, (3) whether such a postulated report actually showed that

5   physician training was not complete, or (4) whether Moll, Van Dick, or Restani ever saw any

6   such report, even if it existed. Speculation about documents that may or may not have existed

7   does not support a strong inference of scienter. *See Wozniak v. Align Tech., Inc.*, No. C-09-3671

8   MMC, 2011 WL 2269418, at *11 (N.D. Cal. June 8, 2011) (rejecting allegations about what

9   defendants "would have known" from reports tracking sales data).

10      Plaintiffs' allegations regarding the Yale transaction are similarly speculative. Plaintiffs

11  allege that clinical personnel falsified a physician training completion form for Yale. TCAC

12  ¶ 136. Then, to support their claims of scienter, Plaintiffs assume: (1) that because Hansen had

13  a general practice of conducting weekly meetings on Mondays, there *would* have been a meeting

14  on December 22, 2008 and December 29, 2008, (2) that Moll, Van Dick and Restani *would* have

15  attended those meetings, and (3) that attending *would* have "exposed" them to "information . . .

16  [that] *would* have alerted them" to the fact that Hansen had limited time to conduct physician

17  training. *Id.* ¶¶ 177-78 (emphasis added). Plaintiffs then postulate that this information, in turn,

18  *would* have alerted Moll, Van Dick and Restani to the falsified training documentation. *Id.*

19  What Plaintiffs do not allege is facts establishing that any meetings actually occurred on those

20  dates, that Moll, Van Dick and Restani attended or that physician training for Yale was

21  discussed. As this Court has reasoned, "[a]bsent allegations about the contents and timing of

22  specific meetings, the fact that meetings were held every Monday or Friday to discuss the

23  company and its products does not raise a strong inference of deliberate recklessness." *In re*

24  *Versant Object Tech. Corp.*, No. C 98-00299 CW, 2001 WL 34065027, at *6 (N.D. Cal. Dec. 4,

25  2001).[4]

26  _____

27  [4] Plaintiffs also allege that by participating in weekly meetings, Moll, Van Dick and Restani
    would have learned "specific facts" and "details" regarding Yale's construction plans, as

28

(Footnote Continued on Next Page.)

12

1          (3)      **Catheter Sales and Utilization**

2          Finally, Plaintiffs' recycled claims about catheter sales and utilization do not establish

3    that Moll, Van Dick or Restani knew of premature revenue recognition for system sales.  TCAC

4    ¶¶ 161-70.  As the Court already ruled, allegations about catheter sales do not "account for the

5    problem outlined in the restatement," namely that Moll, Van Dick and Restani were "receiving

6    false information and incomplete data on [system] sales."  Order at 9.  Likewise, any argument

7    that low catheter sales should have alerted Moll, Van Dick and Restani to premature revenue

8    recognition is "entirely circumstantial and does not support a strong inference of scienter."  *Id.*

9    Plaintiffs attempt to resuscitate the catheter theme by attaching reports of catheter orders and

10   procedure dates.  TCAC ¶¶ 165, 169.  The exhibits do not cure the basic problem, as they still

11   reveal no information about system sales.  Plaintiffs are simply repeating the argument that Moll,

12   Van Dick and Restani *should* have investigated catheter sales and utilization and that such

13   investigation *could* have revealed information regarding system sales.  That circumstantial

14   argument, as the Court has already ruled, does not support a strong inference of scienter.  Order

15   at 9; *see also Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113, 1124 (D.

16   Ariz. 2010) (rejecting scienter allegations that defendants "*should* have looked into the matter

17   further").

18          c.       **Allegations Regarding International Sales Do Not Support Scienter**

19          Plaintiffs also fail to allege that Moll, Van Dick and Restani had contemporaneous

20   knowledge of improper revenue recognition on sales to four international distributors.  As

21   discussed above, Hansen recognized revenue upon shipment to Tier 1 distributors based upon the

22   assessment that such distributors were independently capable of providing installation and

23   physician training.  RJN, Ex. 6 (November 17, 2009 Earnings Call).  The internal investigation

24   revealed instances in which Hansen field services personnel were present during Tier 1

25   ──────────────────────

     (Footnote Continued from Previous Page.)

26   contained in documents allegedly on file with the Connecticut Office of Health Care Access.

27   TCAC ¶¶ 173-5.  But, Plaintiffs fail to allege facts showing that anyone within Hansen was
     aware of the information, that anyone discussed it with Moll, Van Dick or Restani, or that Yale's

28   construction plans necessarily precluded installation at Yale in December 2008.

                                                    13

1    distributor installations, which was determined, in the investigation, to render the Tier 1

2    distributor insufficiently independent for revenue recognition purposes.  *Id.*  Plaintiffs argue that

3    Moll, Van Dick and Restani either knew or were reckless in not knowing, *at the time of revenue*

4    *recognition*, that the Tier 1 distributors were not independently capable of providing installation

5    and physician training.  However, no confidential witnesses allege that Moll, Van Dick or

6    Restani knew of any instances of installation assistance.  Likewise, the SEC makes no allegations

7    whatsoever regarding sales to international distributors.  Hence, Plaintiffs fail to allege any facts

8    demonstrating that Moll, Van Dick or Restani knew of (1) any instances of such installation

9    assistance prior to the restatement or (2) the implications of such assistance on revenue

10   recognition.  Absent any allegations of actual knowledge, Plaintiffs' argument boils down to

11   simple fraud by hindsight.  *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir.

12   2002) ("The purpose of [the PSLRA's] heightened pleading requirement was generally to . . . put

13   an end to the practice of pleading 'fraud by hindsight.'").[5]

14                          **(1)    Installation**

15        Nothing in the TCAC supports Plaintiffs' argument that Moll, Van Dick and Restani

16   *knew or were reckless in not knowing* that Tier 1 distributors were not capable of independently

17   providing system installation.  To the contrary, the exemplar distribution agreement attached by

18   Plaintiffs explicitly states that the distributor assumes the responsibility for installations:

19
          *[Distributor] is obligated to install [the system] at the customer location, as per the*
20        *applicable Hansen Medical Sensei Installation Specification documentation.*

21   TCAC ¶ 78.  Although, as Plaintiffs point out, the agreement also provides the distributor with

22   an option of paying Hansen to conduct an installation, Plaintiffs do not allege that any distributor

23   _____

24   [5] Plaintiffs also allege that Moll, Van Dick and Restani had contemporaneous knowledge of
     improper revenue recognition of a sale to Amayeza Abantu Bio Medical.  TCAC ¶¶ 109-13.
25   That allegation is based on CW2's speculation that the transaction was restated due to a failure to
     comply with a co-marketing agreement.  But Plaintiffs allege no facts demonstrating that such a
26   co-marketing agreement applied to that sale or that some non-compliance with that postulated
     agreement resulted in a restatement of the transaction, let alone facts demonstrating that Moll,
27   Van Dick, or Restani had contemporaneous knowledge of such postulated non-compliance and
     its impact on revenue recognition.
28

                                    14

1   ever exercised that option. *Id.* ¶ 79. Therefore, nothing in the distributorship agreement supports

2   Plaintiffs' claims.

3          Moreover, the TCAC confirms that Hansen trained distributors to perform installations.

4   *Id.* ¶¶ 59, 61.[6] Although confidential witnesses complain that distributors received less on-the-

5   job training than Hansen personnel (*id.* ¶¶ 59-63), Plaintiffs fail to establish that there was any

6   reason to believe distributors were not sufficiently trained to perform installations. Furthermore,

7   judicially noticeable facts demonstrate why distributors might have needed less on-the-job

8   training. Hansen's distributors have been installing complex medical devices for far longer than

9   Hansen has existed. By the time that AB Medica purchased its first Hansen system, for example,

10  it was already an established distributor of robotic surgical systems for Stereotaxis and Intuitive

11  Surgical. *See* RJN, Ex. 7 at Exhibit 10.29 (Sterotaxis S-1/A); Ex. 8 at 6 (Intuitive Surgical

12  424B4). Given the distributors' experience in the robotics field, Plaintiffs fail to establish that,

13  based solely on the amount of training, it was *per se* unreasonable for Hansen's finance

14  department and independent auditors to determine that the Tier 1 distributors had sufficient

15  experience and training to perform installations.[7]

16                         (2)    **Physician Training**

17         Plaintiffs' allegations regarding Tier 1 distributor physician training are even weaker.

18  First, unlike installations, there is no allegation that any Tier 1 distributor sale was restated based

19  on facts indicating the distributor was not sufficiently independent for the purpose of providing

20  physician training. Therefore, Plaintiffs' entire exploration of this issue is irrelevant.

21

22  _____

23  [6] According to CW2, Hansen failed to train Rossyln personnel. TCAC ¶¶ 68, 99. CW2 was not
    a member of either the field services or clinical group and does not allege any personal basis for
24  knowing such facts. Moreover, the TCAC does not allege that such information was
    communicated to Moll, Van Dick, Restani, or anyone making revenue recognition decisions on
25  behalf of Hansen.

26  [7] Plaintiffs also allege that Van Dick *would* have received regular notices from AB Medica
    identifying "the customer, the customer location, and any other information pertinent to an
27  efficient installation process." TCAC ¶ 82. Plaintiffs allege that such notices *would* have
    disclosed installation assistance. *Id.* However, Plaintiffs do not allege that Van Dick ever
28  received such a notice or that the notice disclosed installation assistance.

1    Second, as with installations, the distributor agreement states that the distributor assumes

2    the responsibility for physician training:

3    *[Distributor] shall be responsible for all travel and associated costs related to end user*
     *personnel (as well as [distributor] personnel) attending the End-User Peer Training.*

4    TCAC ¶ 87.  Thus, it is the distributor's exclusive responsibility to ensure that end-users have

5    been trained to meet Hansen's safety specifications.  While the distributor has the option of

6    paying Hansen to provide the physician training, the agreement does not restrict the distributor to

7    Hansen-provided training.  *Id.*

8    Plaintiffs' allegation that only Hansen was capable of providing physician training is

9    based on the mistaken assumption that "End-User Peer Training" for international customers

10   "effectively consist[ed] of the same training" as the "Level 2" training Hansen provided to

11   domestic customers.  *Id.* ¶¶ 88-89.  In fact, requirements for physician training for domestic and

12   international customers are quite different.  For domestic customers, the U.S. Food and Drug

13   Administration ("FDA") mandates Level 2 training, which "consist[s] of a member of Hansen's

14   clinical staff utilizing a training protocol comprised of bench top usage, animal laboratory testing

15   and observation of human cases."  *Id.* ¶ 32.  The FDA does not regulate physician training for

16   international customers.  Instead, Hansen imposes on distributors the requirement to ensure

17   physicians complete End-User Peer Training.  Unlike Level 2 training, End-User Peer Training

18   can be conducted using a robotic simulator (rather than actual system), need not include animal

19   laboratory testing and need not be conducted by a member of Hansen's clinical group.  *Id.* ¶ 87.

20   As the name implies, End-User Peer Training may be sponsored by third parties, including

21   independent peer-to-peer training among physicians.  *See* RJN, Ex. 3 at 33 (Hansen's FY07 10-

22   K); Ex. 9 at 35-36 (Hansen's FY08 10-K) (describing available third-party training).

23   Consequently, the facts do not support Plaintiffs' supposition that Tier 1 distributors were

24   incapable of providing End-User Peer Training.

25                           **(3)    Clinical Support**

26   Plaintiffs' allegations regarding clinical support are also irrelevant.  Clinical support is

27   not physician training and there is no relationship between clinical support and revenue

28   recognition.  In connection with domestic sales, following the required physician training,

16

1    Hansen typically offers optional, ongoing clinical support during procedures to help physicians
2    "ramp [up] learning faster."  RJN, Ex. 10 (February 19, 2008 Earnings Call).  There is no
3    requirement that Hansen provide such support.  *Id.*  ("[O]nce we train them, we are done.").
4    Rather, the Company chooses to offer clinical support to protect patient safety and "help
5    [physicians] through the learning curve."  *Id.*

6          On Tier 1 distributor sales, the distribution agreement states that the distributor assumes
7    the responsibility for providing clinical support:

8          *[Distributor] shall be responsible for providing ongoing clinical support for end users.*
9    TCAC ¶ 84.  However, the ability to independently provide clinical support was not a
10   requirement for Tier 1 distributor status and was not a factor in Hansen's restatement of Tier 1
11   distributor sales.  *See* RJN, Ex. 6 (November 17, 2009 Earnings Call).  There is no allegation that
12   Hansen deferred revenue on any Tier 1 distributor sales pending clinical support training.  TCAC
13   ¶¶ 84, 86.  Consequently, not only have Plaintiffs failed to establish that Moll, Van Dick or
14   Restani knew of any issues regarding Tier 1 distributor clinical support, they have failed to allege
15   any facts demonstrating any link between clinical support and any revenue recognition error.
16   The clinical support allegations provide no support to Plaintiffs' claims in this action.

17                        **(4)     "Channel Stuffing"**
18         Finally, Plaintiffs' allegation that Hansen sold "unneeded" systems to distributors is
19   nothing more than a recasting of their failed "channel stuffing" claims.  TCAC ¶¶ 114-16.  New
20   terminology cannot save this old argument.  As the Court clarified, improper "channel stuffing"
21   refers to the recording of sales in one quarter that is later reversed, causing a revenue reduction
22   upon the customer's return of a product it could not sell or use and never had any intention of
23   keeping.  Order at 10 n. 4; *see also In re Sierra Wireless, Inc., Sec. Litig.*, 482 F. Supp. 2d 365,
24   375 n.2 (S.D.N.Y. 2007).  In contrast to true channel stuffing, "there is nothing inherently
25   improper in pressing for sales to be made earlier than in the normal course."  Order at 10 (*quoting
26   Greebel v. FTP Software*, 194 F.3d 185, 202-03 (1st Cir. 1999)).

27         Based on these principles, it is apparent that the TCAC does not plead either true channel
28   stuffing or anything else improper regarding Hansen's late in quarter sales.  Plaintiffs do not

                                        17

1  allege that any systems sold toward the end of the quarter were subsequently returned.  In fact, at

2  the time of the restatement, Hansen had received full payment for every single restated

3  distributor sale.  RJN, Ex. 6 (November 17, 2009 Earnings Call.)  All Plaintiffs assert is that

4  Hansen provided incentives to close sales by the end of the quarter.  *See, e.g.*, TCAC ¶¶ 105,

5  118.  As the Court previously ruled, such allegations present nothing more than a legitimate

6  business practice of maximizing sales each quarter.  Order at 10; *Skechers U.S.A. Sec. Litig. v.*

7  *Skechers U.S.A., Inc.*, 273 Fed. Appx. 626, 628 (9th Cir. 2008); *Brodsky*, 630 F. Supp. 2d at 1116

8  ("[R]eporting an increase in billable activity towards the end of a financial quarter does not

9  satisfy PSLRA's pleading requirements.").

10           **3.      Plaintiffs Fail to Allege Any Basis for Inferring Scienter**

11           Failing to allege particularized facts evidencing scienter, Plaintiffs ask the Court to infer

12  scienter based on the restatement itself or generic facts about Hansen.  As the Court has already

13  ruled, these allegations do not provide a sufficient basis to infer scienter by Moll, Van Dick or

14  Restani.

15                    **a.      Restatement**

16           Plaintiffs cannot infer scienter from the fact of the restatement.  TCAC ¶¶ 291-301.  As

17  the Court previously ruled, it is not the case that "the accounting mistakes made by Hansen here

18  were so egregious that the Individual Defendants [Moll, Van Dick or Restani] must have been

19  aware of them."  Order at 10-11.  This conclusion "especially is true in light of the fact that

20  Hansen's internal investigation found that the accountants had been given incorrect information."

21  *Id.* at 11.  The Court's conclusion is only strengthened by the SEC Complaint, which also alleges

22  that Hansen's finance department and independent auditors were given incorrect or incomplete

23  information.  TCAC Ex. 1; *see Zucco*, 552 F.3d at 1000; *DSAM Global Value Fund v. Altris*

24  *Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002).

25                    **b.      Core Operations**

26           Moll, Van Dick and Restani's alleged understanding of Hansen's "core

27  business/operations" does not indicate the existence of scienter.  TCAC ¶¶ 279-82.  As the Court

28  previously ruled, the circumstances of the restatement "depict a situation . . . where corporate

18

1   officers' alleged access to manipulated accounting data did not 'support the inference that

2   management was in a position to know that such data was being manipulated.'"  Order at 9-10

3   (*quoting Zucco*, 552 F.3d at 1000-01).  The Complaint contains no additional allegations to

4   suggest that Moll, Van Dick or Restani had "actual access" to facts evidencing the alleged fraud,

5   or that "the nature of the relevant fact[s] [were] of such prominence that it would be absurd to

6   suggest that management was without knowledge of the matter."  *Zucco*, 552 F.3d at 1000

7   (quotations omitted); *South Ferry LP, #2 v. Killinger*, 542 F.3d 776, 782-85 (9th Cir. 2008);

8   *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987-88 (9th Cir. 2008).

9       First, Plaintiffs do not allege facts showing that Moll, Van Dick or Restani had "actual

10  access" to any facts informing them of improper revenue recognition.  *Zucco*, 552 F.3d at 1000.

11  Instead, Plaintiffs generically allege that Moll, Van Dick and Restani "monitored and were aware

12  of the Company's sales and customers."  TCAC ¶ 282.  Courts consistently find that

13  "monitoring" of sales is insufficient to establish executives must have been aware of improper

14  accounting.  *See, e.g.*, *Zucco*, 552 F.3d at 1000-01; *Plichta*, 790 F. Supp. 2d at 1021; *Accuray*,

15  757 F. Supp. 2d at 951; *In re PMI Group, Inc. Sec. Litig.*, No. C 08-1405 SI, 2009 WL 1916934,

16  at *8-10 (N.D. Cal. July 1, 2009).

17      Second, Plaintiffs do not allege that any aspect of Hansen's revenue recognition polices

18  or procedures was "absurd."  Rather, Plaintiffs allege that Hansen is a "relatively small

19  company," that its "executive management was small," and that its business was derived mostly

20  from a limited number of sales of its primary product.  TCAC ¶¶ 279-81.  As in *In re Accuray,*

21  *Inc. Securities Litigation*, 757 F. Supp. 2d 936 (2010), the mere fact that a company derives its

22  revenue primarily from the sale of a "relatively small number of units installed each quarter" is

23  not a sufficient basis to infer scienter of alleged accounting fraud.  *Id.* at 940, 951; *see also*

24  *Rackable*, 2010 WL 199703, at *10-11 (rejecting core operations based on small size of

25  company and executive team).

26                  **c.**    **Executive Departures**

27      Plaintiffs cannot infer scienter from the departures of Restani and two other employees

28  during the Class Period.  TCAC ¶¶ 180-82.  Plaintiffs' conclusory allegations fail to allege

19

1   "sufficient information to differentiate between a suspicious change in personnel and a benign

2   one." *Zucco*, 552 F.3d at 1002.  At most, Plaintiffs allege that a former Vice President of Sales

3   left after Hansen hired Sells in a position above him.  TCAC ¶ 181.  As Moll noted at the time,

4   such a departure is often expected.  *Id.*  Under such circumstances, "the inference that [Hansen]

5   forced certain employees to resign because of its knowledge of the employee's role in the

6   fraudulent representations will never be as cogent or as compelling as the inference that the

7   employees resigned or were terminated for unrelated personal or business reasons." *Zucco*, 552

8   F.3d at 1002; *In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181, 1184 (N.D. Cal. 2000),

9   *aff'd* 335 F.3d 843, *abrogated on other grounds in South Ferry LP, #2 v. Killinger*, 542 F.3d 776

10  (9th Cir. Wash. 2008); *In re Cadence Design Sys.*, 654 F. Supp. 2d 1037, 1049-50 (N.D. Cal.

11  2009).

12                          **d.      Equity Offerings**

13          Plaintiffs cannot infer scienter based on Hansen's equity offerings.  TCAC ¶¶ 283-90.  As

14  the Court previously ruled, the mere fact that Hansen conducted equity offerings during the Class

15  Period does not establish scienter.  Order at 11-12; *In re Calpine Corp. Sec. Litig.*, 288 F. Supp.

16  2d 1054, 1087 (N.D. Cal. 2003) ("[A]llegations of a motive to present better financial statements

17  to secure credit or to engage in similar business activities are insufficient to establish a strong

18  inference of scienter.").

19                          **e.      SOX Certifications**

20          Plaintiffs cannot infer scienter based on SOX certifications.  TCAC ¶¶ 198-201.  As the

21  Court previously reasoned, "if courts were to rely solely on SOX certifications, 'scienter would

22  be established in every case where there was an accounting error . . . thereby eviscerating the

23  pleading requirements for scienter set forth in the PSLRA.'"  Order at 11 (*quoting Glazer*, 549

24  F.3d at 747); *see also In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158-60

25  (C.D. Cal. 2007) (similar).  The TCAC fails to add any allegations demonstrating that Moll and

26  Van Dick were aware of improper revenue recognition at the time the SOX certifications were

27  made.  Instead, Plaintiffs simply quote Hansen's pre-restatement certifications and post-

28  restatement filings acknowledging failure of certain controls.  TCAC ¶¶ 198-202.  These

---

20

1    allegations "standing alone . . . do not give rise to a strong inference of scienter."  *City of*

2    *Westland Police & Fire Ret. Sys. v. Sonic Solutions*, No. C 07-05111 CW, 2009 WL 942182, at

3    *8 (N.D. Cal. Apr. 6, 2009); *Rackable*, 2010 WL 3447857, at *11 (similar).

4          **4.     Totality of Allegations Do Not Raise a Strong Inference of Scienter**

5          Whether considered individually or collectively, Plaintiffs' allegations fail to establish

6    Moll, Van Dick or Restani acted with "deliberate or conscious recklessness."  *In re Silicon*

7    *Graphics Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999).  Instead, Hansen's internal investigation,

8    the SEC Complaint and Plaintiffs' own exhibits point to a single conclusion:  those making

9    statements on behalf of the Company "were unaware of the [revenue recognition errors] because

10   they were provided with false information."  Order at 12.

11         **B.     Plaintiffs' Other Claims Fail for Lack of Falsity and Scienter**

12         Plaintiffs' remaining claims regarding Hansen's (1) financial guidance, (2) product

13   demand, (2) catheter sales and (4) utilization fail for lack of falsity or scienter.  *See* TCAC ¶¶

14   203-77.  These claims are repackaged from the SCAC and are addressed more fully in the

15   Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss the Second

16   Consolidate Complaint at 20-26 (Docket No. 34).  In short, however, the statements at issue are

17   protected by the PSLRA safe harbor as they were identified as forward-looking and accompanied

18   by meaningful cautionary language.  As the Court previously ruled, "projections such as 'none of

19   us have a crystal ball, but we feel very confident that given the pipeline . . . we're going to have a

20   very reason[able] 2009' . . . fall within the forward-looking statements contemplated by the safe

21   harbor provision."  Order at 6-7; *see* 15 U.S.C. § 78u-5(c); *In re Cutera Sec. Litig.*, 610 F.3d

22   1103, 1111 (9th Cir. 2010).

23         First, Plaintiffs cannot assert claims based on Hansen's alleged failure to predict the

24   extent to which the economic meltdown would affect Hansen's performance.  *See* TCAC ¶¶ 249-

25   70.  As Plaintiffs acknowledge, Hansen repeatedly cautioned that "no one knows how the credit

26   markets and the economic conditions are going to affect healthcare" and Hansen "[doesn't] have

27   a crystal ball."  *Id.* ¶¶ 255-56; ¶ 265 ("[U]nderstand we don't know where the economy is going

28   any better than anybody else.").  Hence, claims based on financial guidance and failure to predict

21

1    the future are not actionable.  *See Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc*.,

2    No. 10-CV-03451-LHK, 2011 WL 3501733, at *11-12 (N.D. Cal. Aug. 10, 2011) (dismissing

3    claims based company's statement that it had yet to see significant impact of the economic credit

4    crisis on capital purchasing patterns for hospitals).

5            Second, Plaintiffs cannot assert claims based on vague aspirations of "gradual" or "stair-

6    step" growth or immaterial puffery of "strong demand" or "healthy" pipeline.  *See* TCAC ¶¶ 206,

7    207, 264-65, 271.  Courts routinely dismiss allegations based on such generic statements of

8    corporate optimism.  *See Cutera*, 610 F.3d at 1111 (rejecting statement: "we expect the second

9    half of fiscal 1992 to be stronger than the first half, and the latter part of the second half to be

10   stronger than the first . . . .") (internal citation omitted); *In re Cornerstone Propane Partners,

11   L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1087-88 (N.D. Cal. 2005); *Brodsky*, 630 F. Supp. 2d at

12   1113-14; *Apple*, 243 F. Supp. 2d at 1025-26; *Rackable*, 2010 WL 3447857 at *7.

13           Third, Plaintiffs cannot assert a claim based on Hansen's reported Q108 catheter sales.

14   Plaintiffs do not allege that Hansen misreported the actual number of catheters sold.  Rather,

15   Plaintiffs argue the report was misleading because the total included three large orders.  TCAC

16   ¶¶ 223-25.  Yet, Hansen never denied receiving such orders.  To the contrary, that very quarter,

17   Hansen discussed the fact that some customers place large orders to "not have to deal with the

18   disposables for some period of time." *Id.* ¶ 224.[8]  Moreover, Plaintiffs cannot allege that the

19   reported catheter sales were misleading because they failed to accurately predict future demand

20   and "growth rates" for system sales.  *Id*. ¶ 237.  To the extent Plaintiffs allege catheter sales were

21   the basis for projecting performance, the alleged misstatements are also protected by the PSLRA

22   safe harbor.  *See Accuray*, 757 F. Supp. 2d at 947-48 (statements of current backlog were

23   forward-looking indicators of future revenue); *In re Impac Mortg. Holdings, Inc. Sec. Litig.*, 554

24   _____

25   [8] Plaintiffs also allege the statement is misleading because Hansen previously reported it did not

26   receive large orders in Q407.  TCAC ¶ 220.  The fact that purchasing patterns changed over time
     does not render Hansen's statements false or misleading.  *See Rackable*, 2010 WL 3447857 at *7

27   (rejecting argument that company's actions four months after alleged misstatement rendered
     original statement false or misleading at the time that it was made).

28

1   F. Supp. 2d 1083, 1098-99 (C.D. Cal. 2008) (statements of current loan production were

2   forward-looking indicators of future performance).[9]

3        Finally, Plaintiffs cannot assert a claim based on Hansen's statements regarding

4   utilization.  TCAC ¶¶ 232-35.  Plaintiffs do not allege that Hansen misreported utilization

5   numbers.  Rather, Plaintiffs argue that Hansen downplayed the total number of "inactive"

6   systems.  *Id.* ¶ 232.  Plaintiffs generically allege the statements are misleading based on

7   unsupported speculation that Moll, Van Dick and Restani "would have known about each of

8   these [alleged inactive systems]" at any given time.  *Id.* ¶ 235.  However, what Moll, Van Dick

9   and Restani actually stated was that they did *not* have detailed knowledge about utilization for

10  each system.  *Id.* ¶ 219 ("[Hansen] no longer ha[d] complete visibility into the number of

11  procedures preformed."); ¶ 221 (similar); ¶ 228 (similar).  Rather than touting perfect knowledge

12  of utilization, Moll emphasized that it was a difficult issue warranting further study.  *Id.* ¶ 233.

13  Such qualified statements are also protected by the PSLRA safe harbor.  *See Employers*

14  *Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1131 (9th

15  Cir. 2004) (statement sufficiently qualified by "approximately" and accompanied by other

16  meaningful cautionary statements).

17
    **C.    Plaintiffs Cannot Establish Loss Causation for Stock Price Drops Prior**
18  **        to the Announcement of the Restatement**

19        As they did in the SCAC, Plaintiffs seek to recover damages based not only on Hansen's

20  stock price drop following the announcement of the internal investigation and restatement, but

21  also for stock price drops that occurred prior to that announcement.  But, as with the SCAC,

22  Plaintiffs fail to allege any causal link between the revenue recognition errors disclosed on

23  October 19, 2009 and any stock price drop prior to that date.

24

25  ───────────────────

26  [9] Plaintiffs also allege that Hansen "cannibalized" future catheter sales.  TCAC. ¶¶ 236-47.
    However, Plaintiffs do not allege that any customers returned the purchased catheters.  For the
27  reasons discussed above, Plaintiffs do not state a claim for improper channel stuffing.  *Supra*
    Section III.A.2.c.(4).
28

1    First, pre-October 2009 disclosures that Hansen *extended* the timing for revenue

2    recognition on certain transactions in compliance with its revenue recognition policy do not

3    disclose any revenue recognition errors.  Quite the opposite, these disclosures affirmed that

4    Hansen was *not* prematurely recognizing revenue when installation and training obligations

5    remained at quarter-end.  *See* TCAC ¶¶ 314, 333-44.  Such disclosures fail to reveal the falsity of

6    any prior statement and, consequently, any accompanying stock drop would be unrelated to the

7    later disclosure of revenue recognition errors.  *See Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d

8    161, 175 n.4 (2d Cir. 2005); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz.

9    2007).  Moreover, these disclosures could not reveal the "truth" regarding the revenue

10   recognition issues that led to actual misstatements in the financial statements because Plaintiffs

11   allege that Hansen continued to conceal such problems throughout the class period.  *See* TCAC

12   ¶¶ 217, 304, 313-14, 333-35, 344-45, 352.  Plaintiffs cannot allege that Hansen simultaneously

13   concealed and disclosed the same "truth."  *In re Redback Networks, Inc. Sec. Litig.*, No. C 03-

14   5642 JF, 2007 WL 963958, at *1 (N.D. Cal. Mar. 30, 2007); *Powell v. Idacorp, Inc.*, No. CV04-

15   249-S-EJL, 2006 WL 851116, at *3 (D. Idaho Mar. 29, 2006).

16   Second, pre-October 2009 disclosures regarding Hansen's general financial well-being

17   simply have nothing to do with revenue recognition.  Nor may Plaintiffs plausibly argue that

18   these discussions of various indicators of Hansen's overall financial well-being partially

19   disclosed Hansen's revenue recognition errors by revealing the "materialization" or "impact" of

20   the alleged fraud.  *See* TCAC ¶¶ 313-14, 318, 334-35, 344-345, 352-53.  A stock drop following

21   negative news of the company's financial well-being does not show the "realization" of fraud.

22   *Metzler Inv. GMBH v. Corinthian College, Inc.*, 540 F.3d 1049, 1062-64 (9th Cir. 2008).  As this

23   Court has affirmed, generic disclosures regarding a company's financial condition and future

24   prospects are not "coded message[s] revealing the fraud."  *Rackable*, 2010 WL 3447857, at *12

25   (*quoting Metzler*, 540 F.3d at 1064); *see also Powell*, 2007 WL 1498881, at *4-5 (rejecting

26   plaintiffs' allegations of partial disclosures); *In re Downey Sec. Litig.*, No. CV 08-3261-JFW,

27   2009 WL 2767670, at *14-15 (C.D. Cal. Aug. 21, 2009) (similar); *In re LeapFrog Enterprises,*

28   *Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1041-43 (N.D. Cal. 2007) (similar).

1    Because Plaintiffs have not alleged facts demonstrating a link between any pre-

2  restatement disclosure and any alleged misrepresentation, any claims relating to such disclosures

3  and accompanying stock drops must be dismissed.  *See Immersion*, 2011 WL 871650, at *8-9

4  (rejecting attempt to plead loss causation based on pre-restatement disclosures unconnected to

5  the alleged fraud).

6    **D.    Plaintiffs' Section 20(a) Claim Should Be Dismissed**

7    Plaintiffs' Section 20(a) claim fails, for two reasons.  First, as set forth above, Plaintiffs

8  have failed to state an underlying Section 10(b) claim, so their Section 20(a) claim must also be

9  dismissed.  *See, e.g.*, *Zucco*, 552 F.3d at 990.  In addition, under Section 20(a), Plaintiffs must

10  allege that the Moll, Van Dick and Restani were "control persons" with reference to the

11  fraudulent conduct alleged in the primary violation.  But, Plaintiffs' "control" allegations are

12  generalized, conclusory and unsupported by factual allegations.  TCAC ¶¶ 386-89.  Such

13  "boilerplate" allegations are insufficient to state a claim.  *See Downey*, 2009 WL 736802, at *15.

14  **IV.    CONCLUSION**

15    For all of the foregoing reasons, Plaintiffs' TCAC should be dismissed with prejudice as

16  to Hansen Moll, Van Dick and Restani.

17  DATED:  January 9, 2010                    BINGHAM MCCUTCHEN LLP
18                                             David M. Balabanian
                                               Charlene S. Shimada
19                                             John D. Pernick
                                               Lucy Wang
20                                             Three Embarcadero Center
                                               San Francisco, CA 94111-4067
21                                             Telephone:  415.393.2000
                                               Facsimile:  415.393.2286
22

23

24
                                               By:_____ /s/ Charlene S. Shimada_____
25                                                            Charlene S. Shimada

26
                                               Attorneys for Defendants Hansen Medical, Inc.,
27                                             Frederic H. Moll, Steven M. Van Dick and Gary C.
                                               Restani
28

25