BINGHAM MCCUTCHEN LLP
David M. Balabanian (SBN 37368)
david.balabanian@bingham.com
Charlene S. Shimada (SBN 91407)
charlene.shimada@bingham.com
John D. Pernick (SBN 155468)
john.pernick@bingham.com
Lucy Wang (SBN 257771)
lucy.wang@bingham.com
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

Attorneys for Defendants
Hansen Medical, Inc., Frederic H. Moll,
Steven M. Van Dick and Gary C. Restani

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ROBERT CURRY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HANSEN MEDICAL INC., FREDERIC H. MOLL, STEVEN M. VAN DICK, GARY C. RESTANI and CHRISTOPHER SELLS,<br><br>Defendants. | Case No. 09-cv-5094 CW<br><br>**DEFENDANTS HANSEN MEDICAL, INC., FREDERIC H. MOLL, STEVEN M. VAN DICK AND GARY C. RESTANI'S REPLY IN SUPPORT OF MOTION TO DISMISS THE THIRD CONSOLIDATED AMENDED COMPLAINT**<br><br>Date:         May 3, 2012<br>Time:         2:00 p.m.<br>Courtroom: 2<br>Judge:        Hon. Claudia Wilken |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................... 1
II. ARGUMENT ...................................................................................................................... 2
    A. Plaintiffs' Claims Regarding the Restatement Fail for Lack of Scienter ............... 2
        1. Sells's Scienter Is Not "Attributable" to the Company ............................. 2
            a. *Respondeat Superior* ...................................................................... 2
            b. Collective Scienter ....................................................................... 3
        2. Plaintiffs Fail To Plead Facts Establishing that Moll, Van Dick or Restani Acted with Deliberate Recklessness ............................................. 4
            a. Circumstantial Allegations Regarding Restated Transactions .................................................................................. 5
                (1) Domestic Sales ................................................................. 6
                (2) International Sales .......................................................... 6
            b. Generic Circumstantial Allegations ............................................. 8
    B. Plaintiffs' Other Claims Fail for Lack of Falsity and Scienter .......................... 10
        1. Statements Regarding Financial Guidance and Product Demand Were Not False or Misleading ................................................................ 10
        2. Statements Regarding Catheter Sales and Utilization Were Not False or Misleading ................................................................................ 11
    C. Plaintiffs Cannot Establish Loss Causation for Stock Price Declines Prior to the Announcement of the Restatement ............................................. 12
    D. Plaintiffs Do Not Allege a "Control Person" Claim .......................................... 15
III. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Alaska Elec. Pension Fund v. Flowserve Corp.*
  572 F.3d 221 (5th Cir. 2009) ........................................................................................................ 14

*DSAM Global Value Fund v. Altris Software, Inc.*
  288 F.3d 385 (9th Cir. 2002) .......................................................................................................... 9

*Glazer Capital Management, LP v. Magistri*
  549 F.3d 736 (9th Cir. 2008) ............................................................................................... 2, 3, 4, 5

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992) .......................................................................................................... 3

*Hollinger v. Titan Capital Corp.*
  914 F.2d 1564 (9th Cir. 1990) ..................................................................................................... 2, 3

*In re Accuray, Inc. Sec. Litig.*
  757 F. Supp. 2d 936 (N.D. Cal. 2010) ......................................................................................... 6, 9

*In re Apollo Group Sec. Litig.*
  No. 08-16971, 2010 WL 5927988 (9th Cir. June 23, 2010) ......................................................... 13

*In re Apple Computer, Inc., Sec. Litig.*
  243 F. Supp. 2d 1012 (N.D. Cal. 2002) ........................................................................................... 6

*In re Cadence Design Sys., Inc. Sec. Litig.*
  692 F. Supp. 2d 1181 (N.D. Cal. 2010) ......................................................................................... 15

*In re Cutera Sec. Litig.*
  610 F.3d 1103 (9th Cir. 2010) ....................................................................................................... 11

*In re Immersion Corp. Sec. Litig.*
  No. C-09 4073 MMC, 2011 WL 871650 (N.D. Cal. Mar. 11, 2011) ............................................ 13

*In re Impac Mortgage Holdings, Inc. Sec. Litig.*
  554 F. Supp. 2d 1083 (C.D. Cal. 2008) ......................................................................................... 11

*In re LDK Solar Sec. Litig.*
  584 F. Supp. 2d 1230 (N.D. Cal. 2008) ........................................................................................... 9

*In re Mercury Interactive Corp. Sec. Litig.*
  No. C 05-3395 JF, 2007 WL 2209278 (N.D. Cal. July 30, 2007) ................................................. 13

*In re Nvidia Corp. Sec. Litig.*
  No. C 08-04260 RS, 2011 WL 4831192 (N.D. Cal. Oct. 12, 2011) ................................................ 4

*In re Rackable Systems, Inc. Sec. Litig.*
  No. C 09-0222 CW, 2010 WL 3447857 (N.D. Cal. Aug. 27, 2010) .................................. 9, 14

*In re Redback Networks, Inc. Sec. Litig.*
  No. C 03-5642 JF, 2007 WL 963958 (N.D. Cal. Mar. 30, 2007) ............................................ 14

*In re Silicon Graphics Sec. Litig.*
  183 F.3d 970 (9th Cir. 1999)........................................................................................... 1, 5, 7

*In re Sipex Corp. Sec. Litig.*
  No. C 05-00392 WHA, 2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) .............................. 9, 10

*In re Sonus Networks, Inc. Sec. Litig.*
  No. Civ.A.04-0294-DPW, 2006 WL 1308165 (D. Mass. May 10, 2006) ................................ 3

*In re SunPower Sec. Litig.*
  C 09-5473 RS, 2011 WL 7404238 (N.D. Cal. Dec. 19, 2011) ................................................ 10

*In re U.S. Aggregates, Inc. Sec. Litig.*
  235 F. Supp. 2d 1063 (N.D. Cal. 2002) .................................................................................. 10

*In re Verifone Holdings, Inc. Sec. Litig.*
  No. C 07-06140 MHP, 2009 WL 1458211 (N.D. Cal. May 26, 2009)................................... 10

*In re Versant Object Tech. Corp.*
  No. C 98-00299 CW, 2001 WL 34065027 (N.D. Cal. Dec. 4, 2001).................................. 6, 8

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*
  694 F. Supp. 2d 1192 (W.D. Wash. 2009)................................................................................ 9

*Janus Capital Group, Inc. v. First Derivative Traders*
  131 S. Ct. 2296 (2011) .............................................................................................................. 2

*Metzler Inv. GMBH v. Corinthian College, Inc.*
  540 F.3d 1049 (9th Cir. 2008)................................................................................................ 13

*Middlesex Ret. Sys. v. Quest Software, Inc.*
  No. CV 06-6863 DOC (RNBx), 2008 WL 7084629 (C.D. Cal. July 10, 2008) ..................... 10

*Nordstrom, Inc. v. Chubb & Son, Inc.*
  54 F.3d 1424 (9th Cir. 1995).................................................................................................... 3

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*
  96 F.3d 1151 (9th Cir. 1996).................................................................................................. 15

*Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*
  No. 10-CV-03451-LHK, 2011 WL 3501733 (N.D. Cal. Aug. 10, 2011) ......................... 11, 12

DEFENDANTS HANSEN, MOLL, VAN DICK AND RESTANI'S MOTION TO DISMISS THE TCAC
Case No. 09-cv-5094 CW

*Powell v. Idacorp, Inc.*
    No. CV04-249-S-EJL, 2006 WL 851116 (D. Idaho Mar. 29, 2006) ...................................... 14

*SEC v. Todd*
    642 F.3d 1207 (9th Cir. 2011) .............................................................................................. 12

*Zucco Partners, LLC v. Digimarc Corp.*
    552 F.3d 981 (9th Cir. 2009) ................................................................................... 5, 6, 9, 15

**FEDERAL STATUTES**

15 U.S.C. § 78u–5(c)(1)(A) ............................................................................................................ 11

15 U.S.C. § 78u–5(c)(1)(B) ............................................................................................................ 11

## I. INTRODUCTION

As Defendants Hansen Medical, Inc. ("Hansen"), Frederic H. Moll, Steven M. Van Dick and Gary C. Restani showed in their Motion to Dismiss ("Motion"), Plaintiffs' Third Consolidated Amended Complaint ("TCAC") fails to cure the fatal deficiency Judge Jeremy Fogel identified in dismissing the Second Consolidated Amended Complaint ("SCAC"), namely, Plaintiffs have not alleged facts showing that Moll, Van Dick or Restani had contemporaneous knowledge of the revenue recognition errors subsequently corrected in the Company's restatement. Plaintiffs recognize this failing and argue that they have alleged sufficient facts to establish "deliberate recklessness." But that argument ignores the high bar the Ninth Circuit has set for establishing deliberate recklessness. To do so, a plaintiff must allege particularized facts demonstrating "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care . . . that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999). The TCAC falls far short of that requirement. Instead, the TCAC simply repeats a generic list of "circumstantial" allegations combined with suppositions as to events that might have happened. *See* Opp. at 12. Even adding up the hundreds of pages of speculation, Plaintiffs do not come close to meeting the statutory "minimum [of pleading] particular facts giving rise to a strong inference of *deliberate or conscious* recklessness." *Id.* at 979 (emphasis added).

Lacking any means to allege scienter as to Moll, Van Dick or Restani, Plaintiffs also attempt to circumvent Ninth Circuit law by "attribut[ing]" Sells's alleged fraudulent knowledge to the Company. *See* Opp. at 4. Even if Plaintiffs' allegations were sufficient to establish scienter as to Sells, that would not be sufficient to establish liability on the part of the Company because Sells is not alleged to have made any statements to investors. Plaintiffs' assertion that the Company is deemed to act with scienter so long as *any agent within the organization* had knowledge of falsity misrepresents basic principles of agency law and contradicts controlling Ninth Circuit precedent.

Consequently, the TCAC, as did the SCAC before it, fails to allege sufficient facts to establish scienter on the part of Moll, Van Dick, or Restani. Likewise, Plaintiffs' continued attempt to expand this case beyond the scope of the restatement fails for lack of falsity and loss causation. Therefore, Plaintiffs fail to allege sufficient facts to state a Section 10(b) or Section 20(a) claim against these defendants. The TCAC should be dismissed, with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs' Claims Regarding the Restatement Fail for Lack of Scienter

#### 1.   Sells's Scienter Is Not "Attributable" to the Company

Sells did not make any alleged misstatements on behalf of the Company. Nor do Plaintiffs allege that Sells shared his alleged knowledge of revenue recognition issues with anyone who did. Consequently, Plaintiffs' allegations as to Sells, even if sufficient to establish scienter as to him, are insufficient to state a securities fraud claim against Hansen. *See Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2298-99 (2011). Plaintiffs cannot evade this straightforward principle by appeal to *respondeat superior* or collective scienter.

##### a.   *Respondeat Superior*

Sells's knowledge cannot be attributed to the Company for the purposes of a securities fraud claim on the theory that he was an employee "acting within the scope of his agency." Opp. at 5. By Plaintiffs' logic, a company would be liable under Section 10(b) if any employee, *at any level of the organization*, had relevant knowledge of falsity. This would be true even if an employee deliberately concealed his knowledge from his superiors, finance personnel, outside auditors and those ultimately responsible for the company's financial statements. Such an outcome would be directly contrary to Ninth Circuit law. As the Ninth Circuit recently stated in *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736, 749 (9th Cir. 2008) (cited at Opp. at 6): "The mere fact that someone at [the Company] had knowledge" is not sufficient to establish scienter as to the Company.

Plaintiffs' reliance on *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1570 (9th Cir. 1990) is misplaced. In *Hollinger*, the defendant, a broker-dealer, employed a securities salesman

2

1 who misrepresented to the NASD (and his employer) facts regarding a prior forgery conviction.
2 He also failed to disclose those facts to his customers.  Thus, the salesman himself made false
3 statements in connection with the sale of securities and was potentially primarily liable for those
4 statements.  In that circumstance, the Ninth Circuit found it possible for the broker-
5 dealer/employer to be secondarily liable under a *respondeat superior* theory.  *Id.* at 1577-78.
6 Here, Sells did not make any false statements to investors, so there is no direct liability as to
7 which a *respondeat superior* theory could attach.  Moreover, in *Hollinger*, the Ninth Circuit
8 rejected the attribution of scienter theory offered by Plaintiffs here, sustaining summary
9 judgment in favor of the broker-dealer on the primary liability claim on the ground that there was
10 no evidence that the broker-dealer, as opposed to its salesman, had knowledge of the undisclosed
11 facts.  Because there was no evidence that the company knew of any contradictory information at
12 the time of the alleged misstatements, the *Hollinger* plaintiffs "failed to raise a triable issue of
13 fact as to their claim that [the company] acted with the requisite scienter under § 10(b) and Rule
14 10b-5."  *Id.* at 1572.  That is also true of Plaintiffs here. [1]

### b.   Collective Scienter

16    Nor can Plaintiffs attribute Sells's alleged fraudulent knowledge to the Company under a
17 "collective scienter" theory.  As the Ninth Circuit stated in *Nordstrom, Inc. v. Chubb & Son, Inc.*,
18 54 F.3d 1424, 1435 (9th Cir. 1995): "[T]here is no case law supporting an independent
19 'collective scienter' theory."  Again in *Glazer*, the Ninth Circuit affirmed: "Our circuit has not
20 previously adopted a theory of collective scienter."  549 F.3d at 744.  Indeed, the *Glazer* court
21 not only declined the invitation to adopt "collective scienter," it rejected its application in
22 precisely the situation presented here.  *Id.* at 744-45. [2]

---

[1] *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992) is not to the contrary.  In *Hanon* the testimony of high level executives created a genuine issue of material fact with respect to the scienter as to both the company and its CEO.  *Id.* at 502.

[2] As the Ninth Circuit specifically declined to follow the Second Circuit's collective scienter approach, Plaintiffs' citations to district court cases within the Second Circuit are irrelevant.  *See* Opp. at 6 (citing *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 627 (S.D.N.Y. 2005); *In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 516 (S.D.N.Y. 2009); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006)).  Similarly inappropriate is Plaintiffs' citation to *In re Sonus Networks, Inc. Sec. Litig.*, No. Civ.A.04-0294-

(Footnote Continued on Next Page.)

1         In *Glazer*, plaintiff failed to allege the officer "responsible for actually making the statements" on behalf of the company knew of the alleged fraud. *Id.* at 745. In an attempt to replead corporate scienter, plaintiff moved to file an amended complaint naming the company's former Senior Vice President for Sales and Marketing as an individual defendant. *Id.* The Ninth Circuit affirmed the district court's denial of plaintiff's motion. *Id.* Although SEC and DOJ investigations had concluded that the former senior vice president approved the alleged fraudulent transactions, the Ninth Circuit ruled that, because that former employee did not make the statements on which the fraud claim was based, the fact that plaintiff "could have shown that a *different* executive knew about the [alleged fraud] would do nothing to resuscitate [his] claims" against the company. *Id.*

        Likewise, Plaintiffs cannot resuscitate their claims against Hansen by naming Sells as an individual defendant. Even if Plaintiffs' allegations were sufficient to establish knowledge on the part of Sells, Sells did not make any of the statements on which Plaintiffs' securities fraud claims are based. Under such circumstances, finding scienter as to Hansen based on Sells's alleged knowledge would directly contravene the Ninth Circuit's rejection of collective scienter in *Glazer*.[3]

### 2. Plaintiffs Fail To Plead Facts Establishing that Moll, Van Dick or Restani Acted with Deliberate Recklessness

        Plaintiffs essentially concede that they cannot allege facts sufficient to allege either fraudulent intent or actual awareness of the alleged fraud on the part of Moll, Van Dick or Restani. Opp. at 7. So, as a fallback, Plaintiffs argue that their allegations are sufficient to demonstrate "deliberate recklessness." But, tellingly, Plaintiffs fail to describe the Ninth

---

(Footnote Continued from Previous Page.)

DPW, 2006 WL 1308165, at *23-*24 (D. Mass. May 10, 2006), which explicitly declines to follow the Ninth Circuit's approach.

[3] Plaintiffs do not and could not allege that this is one of those rare circumstances described in the court's *dicta* in which a company's public statements are "so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publication." *Glazer*, 549 F.3d at 744; *see also In re Nvidia Corp. Sec. Litig.*, No. C 08-04260 RS, 2011 WL 4831192, at *11 (N.D. Cal. Oct. 12, 2011) (rejecting claim that financial statements were "dramatically false" as to support an inference of scienter under *Glazer*).

1 | Circuit's requirements for that theory.  To plead "deliberate recklessness" in the Ninth Circuit,
2 | plaintiffs must still allege particularized facts demonstrating that defendants committed a "form
3 | of intentional or knowing misconduct."  *Silicon Graphics*, 183 F.3d at 976.  Specifically, "facts
4 | showing mere recklessness or a motive to commit fraud and opportunity to do so . . . are not
5 | sufficient."  *Id.* at 974.  Rather, plaintiffs must plead "a highly unreasonable omission, involving
6 | not merely simple, or even inexcusable negligence, but an extreme departure from the standards
7 | of ordinary care . . . that is either known to the defendant or is so obvious that the actor must
8 | have been aware of it."  *Id.* at 976 (quoting *Hollinger*, 914 F.2d at 1569); *see also Zucco*
9 | *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).  The allegations of the
10 | TCAC fail to meet that standard.  Rather, for the most part, the TCAC contains the same
11 | circumstantial allegations and conclusory assumptions that the Court found insufficient in the
12 | prior complaint.
13 |       The few allegations that are new do not cure that fatal defect.  Plaintiffs primarily add
14 | allegations regarding issues that were discovered during the course of Hansen's internal
15 | investigation and then claim that Moll, Van Dick and Restani were deliberately reckless in not
16 | discovering those facts at the time of the transactions.  But Plaintiffs cannot meet the Ninth
17 | Circuit's deliberate recklessness standard by pleading fraud-by-hindsight.  *Silicon Graphics*, 183
18 | F.3d at 988.  The mere fact that a subsequent investigation "was able to discover [the alleged
19 | fraud] does not create a direct inference that [defendants] personally knew" about the errors at
20 | the time.  *Glazer*, 549 F.3d at 748.  Similarly, Plaintiffs cannot establish "deliberate
21 | recklessness" by asserting that defendants "should have known" about errors:  "This is not
22 | sufficient to meet the stringent scienter pleading requirements of the PSLRA."  *Id.* (citing *Silicon*
23 | *Graphics*, 183 F.3d at 977).
24 |               **a.**      **Circumstantial Allegations Regarding Restated Transactions**
25 |       Plaintiffs allege no particularized facts demonstrating that Moll, Van Dick, or Restani had
26 | "direct knowledge of facts" about the restated transactions that support a strong inference of
27 | scienter.  Opp. at 7-12.  With respect to both the domestic and international sales, Plaintiffs
28 | allege nothing more than a general familiarity with Hansen's revenue recognition policy and

5

sales strategy. Plaintiffs then speculate as to what information Moll, Van Dick, and Restani might have received regarding particular restated transactions. As was the case with the SCAC, Plaintiffs' attempt to allege scienter through supposition and conjecture is insufficient to state a claim.

### (1) Domestic Sales

Plaintiffs' allegations with respect to the Yale transaction demonstrate the failings of their approach. Plaintiffs do not allege any specific facts demonstrating that Moll, Van Dick or Restani were aware that physician training documents were falsified. Instead, Plaintiffs engage in vague speculation about meetings that they contend *would* have occurred toward the end of the quarter, some of which, they assume, Moll *would* have attended. *Id.* Entirely absent are any allegations based on a witness's personal knowledge that such meetings actually occurred on those dates, let alone requisite allegations as to the "contents and timing of specific meetings." *In re Versant Object Tech. Corp.*, No. C 98-00299 CW, 2001 WL 34065027, at *6 (N.D. Cal. Dec. 4, 2001). Aside from such unsupported speculation as to the Yale transaction, Plaintiffs rely on the generic assertion that Moll, Van Dick and Restani should have been aware of revenue recognition errors with respect to domestic sales generally because they were "carefully monitoring" sales. As courts have consistently ruled, "monitoring" does not establish deliberate recklessness. *See, e.g.*, *Zucco*, 552 F.3d at 1000-01; *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 951 (N.D. Cal. 2010); *In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002).[4]

### (2) International Sales

Plaintiffs' allegations with respect to international distributor sales are similarly flawed. Again, Plaintiffs allege no facts demonstrating that Moll, Van Dick or Restani knew, at the time

---

[4] Plaintiffs' allegations as to Edgewood Hospital are irrelevant because there is no allegation that revenue on the Edgewood Hospital sale were restated, and Plaintiffs allege no public disclosure of any restatement or revenue issue with respect to Edgewood. In the absence of such a disclosure (and any resulting loss), Plaintiffs' speculation as to whether revenue on that transaction was properly recorded is insufficient to state a claim. Moreover, Plaintiffs' allegations regarding Edgewood Hospital are based on notes from an undated document, which was not alleged to have been authored by or distributed to Moll, Van Dick or Restani.

6

1  of any restated transaction, that the distributor did not meet the independence requirements for
2  revenue recognition.  To the contrary, as Plaintiffs acknowledge, distributors' engineers
3  specifically flew to Hansen's offices to receive in-person installation training from Hansen
4  personnel.  Opp. at 8; TCAC ¶ 59.  Plaintiffs' hindsight contention that Hansen's training of
5  distributors was insufficient does not establish that Moll, Van Dick, or Restani knew, or were
6  deliberately reckless in not knowing, at the time of any transaction, that any distributor was
7  insufficiently trained.  To make that showing, in the absence of allegations showing actual
8  knowledge, Plaintiffs would have to allege particularized facts demonstrating that the training
9  program Hansen designed and implemented was such an "extreme departure from the standards
10 of ordinary care" for training medical device distributors that Moll, Van Dick and Restani must
11 have been aware of its insufficiency.  *Silicon Graphics*, 183 F.3d at 976.  There are no such
12 allegations in the TCAC.
13         Plaintiffs' postulations regarding the language of the distributorship agreement contribute
14 nothing to their attempt to establish scienter.  As Plaintiffs acknowledge, the agreement "stat[es]
15 that the distributor is responsible for installations."  Opp. at 9.  Plaintiffs argue that other
16 provisions created an incentive for distributors to pay Hansen to conduct installations.  But that
17 "incentive" is irrelevant to the underlying revenue recognition issue of whether the distributor
18 was independently able to perform installations.  Moreover, Plaintiffs do not cite a single
19 instance in which a Tier 1 distributor actually invoked this purported "mandatory" option and
20 paid Hansen to install a system.  Hence, Plaintiffs' contract interpretation exercise does not
21 establish a basis for improper revenue recognition, much less state a claim for fraud.
22         Similarly, Plaintiffs' parsing of the distributorship agreement's provisions regarding end-
23 user peer training ignores the agreement's express language making the distributor responsible
24 for providing such training.  Plaintiffs argue that distributors could not have provided end-user
25 peer training because "there were no animal laboratories at distributor sites."  Opp. at 10.  But, as
26 is set out in the TCAC itself, unlike domestic customers who must complete the animal
27 laboratory testing that is required for Level 2 training, international customers required only
28 "bench-top robotic navigation practice utilizing simulators and/or Sensei robots."  TCAC ¶ 87.

7

Consequently, Plaintiffs allege no facts establishing that, with respect to any international Tier 1 distributor sale, Moll, Van Dick, or Restani either knew, or were deliberately reckless in not knowing, that the distributor was not able to provide the required level of training to an end customer.[5]

### b. Generic Circumstantial Allegations

The remainder of Plaintiffs' scienter argument is a rehash of the "circumstantial" allegations from the SCAC that the Court has already found insufficient. *See* Opp. at 12-18. As the Court ruled in dismissing the SCAC, generic allegations about Hansen's business do not support a strong inference that Moll, Van Dick or Restani acted with knowledge or deliberate recklessness with respect to the accounting errors at issue. Order at 10-11. Rather, the circumstances of the restatement "depict a situation . . . where corporate officers' alleged access to manipulated accounting data did not 'support the inference that management was in a position to know that such data was being manipulated.'" *Id.* at 9-10 (quoting *Zucco*, 552 F.3d at 1000-01).

Despite the Court's Order, Plaintiffs continue to rely on statements from confidential witnesses who are not described with sufficient particularity and whose statements are not indicative of scienter. *See* Order at 7 (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1015-16 (9th Cir. 2005)). As Plaintiffs concede, not a single confidential witness worked directly with revenue recognition or reported directly to Moll, Van Dick or Restani. Indeed, the confidential witnesses are only able to allege that Moll, Van Dick and Restani "received reports" and "participated in weekly sales and installation meetings." Opp. at 12-13. As this Court has reasoned, the "fact that meetings were held every Monday or Friday to discuss the company and its products does not raise a strong inference of deliberate recklessness." *Versant*, 2001 WL 34065027, at *6.

---

[5] Plaintiffs' allegations with respect to "clinical support training" as opposed to "end-user peer training" are irrelevant. Plaintiffs allege no facts demonstrating that revenue on any sale, either domestic or international, was restated due to a determination that Hansen or its distributors had an obligation to provide clinical support training to end-users on an ongoing basis after the initial training session.

1    Plaintiffs get no more traction by repeating allegations about the restatement itself. As
2    the Court previously ruled, neither the fact of the restatement nor the nature of the accounting
3    errors supports an inference of scienter. Order at 10-11. Nor do the SOX certifications provide
4    any further evidence of scienter. *Id.* at 11. As the Court explained, if such allegations were
5    sufficient, "'scienter would be established in every case where there was an accounting error . . .
6    thereby eviscerating the pleading requirements for scienter set forth in the PSLRA.'" *Id.*
7    (quoting *Glazer*, 549 F.3d at 747); *Zucco*, 552 F.3d at 1004; *DSAM Global Value Fund v. Altris*
8    *Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002).
9    Similarly insufficient is Plaintiffs' repetition of allegations from the SCAC regarding
10   Hansen's size, the Sensei System's status as Hansen's core product, Hansen executives'
11   knowledge of sales status and the use of incentives to close sales by the end of the quarter. As
12   the Court ruled previously, such allegations are insufficient to establish the level of scienter
13   necessary to state a securities fraud claim. Order at 9-10; *see also Accuray*, 757 F. Supp. 2d at
14   951; *In re Rackable Systems, Inc. Sec. Litig.*, No. C 09-0222 CW, 2010 WL 3447857, at *10-11
15   (N.D. Cal. Aug. 27, 2010).
16   Nor can Plaintiffs establish scienter through hearsay. For example, CW3's statements
17   related to what one Hansen officer told CW3 about conversations with Moll concerning Sells's
18   "unethical sales tactics" fail to demonstrate the requisite "personal knowledge" regarding what
19   Moll was told. *See* Order at 8 (rejecting hearsay allegations); *Zucco*, 552 F.3d at 997 (similar).
20   Moreover, an unspecific discussion of sales tactics does not bear any necessary relationship to
21   the revenue recognition issues that resulted in the restatement. Such vague hearsay is not a "red
22   flag" indicating accounting fraud. *Compare In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
23   694 F. Supp. 2d 1192, 1213 (W.D. Wash. 2009) (report disclosing actual internal control
24   deficiencies was a "red flag"); *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1247 (N.D.
25   Cal. 2008) (defendants expressly "notified of the purportedly improper accounting practices").
26   Finally, Plaintiffs cannot rely on the remedial actions taken by Hansen following its
27   internal investigation to support scienter with respect to the revenue recognition errors. In direct
28   contrast to *In re Sipex Corp. Sec. Litig.*, No. C 05-00392 WHA, 2005 WL 3096178 (N.D. Cal.

9

Nov. 17, 2005), there is no allegation that the investigation found that Moll, Van Dick or Restani was personally involved in any fraudulent activity. *Id.* at *1-2. Quite the opposite, the internal investigation determined that all the irregularities occurred outside of the finance department. *Compare In re SunPower Sec. Litig.*, C 09-5473 RS, 2011 WL 7404238 at *2 (N.D. Cal. Dec. 19, 2011) (finance director and corporate controller directly implicated in manipulation of accounting database). Where, as here, a company announces the need for a restatement, it is unremarkable that the Company would seek to implement remedial measures to reassure investors. *See, e.g.*, *In re Verifone Holdings, Inc. Sec. Litig.*, No. C 07-06140 MHP, 2009 WL 1458211, at *9 (N.D. Cal. May 26, 2009); *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp .2d 1063, 1074 (N.D. Cal. 2002).[6]

### B. Plaintiffs' Other Claims Fail for Lack of Falsity and Scienter

As in the SCAC, Plaintiffs attempt to allege misrepresentation claims beyond the revenue recognition errors disclosed in the restatement. And, as with the SCAC, those claims fail. All the alleged misstatements are protected by the PSLRA safe harbor as they were identified as forward-looking and accompanied by meaningful cautionary language. Motion at 21-23. Plaintiffs' arguments to the contrary are belied by the factual allegations in the TCAC.

#### 1. Statements Regarding Financial Guidance and Product Demand Were Not False or Misleading

Plaintiffs concede that Hansen's statements regarding financial guidance and anticipated product demand are forward-looking projections protected by the safe harbor. Opp. at 24; *see also Order* at 6-7 (ruling that projections such as "we feel very confident that given the pipeline . . . we're going to have a very reason[able] 2009" are protected by the safe harbor provision). Plaintiffs also concede that the statements were accompanied by cautionary language warning investors that the Company did not yet know how the credit crunch would affect its sales

---

[6] In the absence of suspicious conditions, the changes in management during the class period do not support a strong inference of scienter. *Compare Middlesex Ret. Sys. v. Quest Software, Inc.*, No. CV 06-6863 DOC (RNBx), 2008 WL 7084629, at *9 (C.D. Cal. July 10, 2008) (departure of former executive probative of scienter where executive refused to cooperate with internal investigation).

1  pipeline. Opp. at 21; TCAC ¶¶ 255-56 ("[N]o one knows how the credit markets and the
2  economic conditions are going to affect healthcare"). Contrary to Plaintiffs' assertions, such
3  cautionary language was meaningful and directly addressed the risk that the tightening of the
4  credit market may impede hospitals' ability to make purchases of capital equipment. *See, e.g.*, *In*
5  *re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554 F. Supp. 2d 1083, 1080 (C.D. Cal. 2008)
6  (approving cautionary language disclosing risk of delays in raising capital and risk in market
7  conditions); *Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.*, No. 10-CV-03451-
8  LHK, 2011 WL 3501733, at *11-12 (N.D. Cal. Aug. 10, 2011) (approving cautionary language
9  disclosing the risk of "unforeseen national and global economic downturns" may impact
10 purchases of surgical robotic systems).
11       Therefore, not only have Plaintiffs failed to allege facts demonstrating that any of
12 Hansen's financial projections were knowingly false at the time they were made, each of those
13 statements was identified as forward-looking and accompanied by meaningful cautionary
14 language. Consequently, the projections are protected by the safe harbor irrespective of scienter.
15 15 U.S.C. § 78u–5(c)(1)(A); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010). Even
16 without that meaningful cautionary language, however, Hansen's financial projections would be
17 protected in the absence of particularized facts demonstrating that they were made with actual
18 knowledge of falsity. 15 U.S.C. § 78u–5(c)(1)(B). There are no such particularized allegations
19 in the TCAC. *See, e.g.*, *Intuitive Surgical, Inc.*, 2011 WL 3501733, at *11-12 (dismissing claims
20 based on company's statement that it had yet to see significant impact of the economic credit
21 crisis on capital purchasing patterns for hospitals).

### 2. Statements Regarding Catheter Sales and Utilization Were Not False or Misleading

24       Plaintiffs also cannot allege that Hansen made any false or misleading statements
25 regarding catheter sales or utilization. As to the catheter sales, Plaintiffs attempt to argue that
26 Hansen "created [a] false impression" in reporting Q108 catheter sales because the Company did
27 not disclose that the total sales included approximately three large orders. Opp. at 22. As quoted
28 in the TCAC, however, Van Dick directly discussed the fact that customers do place large

11

"bolus" orders. TCAC ¶ 224. As Van Dick explained, some customers prefer to make large orders so they can avoid "deal[ing] with the disposables for some period of time." *Id.* Plaintiffs' own allegations, therefore, do not support the argument that Hansen misled investors as to the existence of large catheter orders.[7]

Similarly, Plaintiffs attempt to argue that Hansen "falsely portray[ed]" the utilization of installed systems. Opp. at 23. As quoted in the TCAC, however, Moll discussed the challenges of analyzing utilization and directly acknowledged that there are some installed systems that "aren't being used a lot." TCAC ¶ 233. As Moll explained, the installed systems fall along a spectrum of utilization rates and the Company was in the process of trying to understand the issue in greater depth. *Id.* Plaintiffs fail to show how the Company's transparent disclosures were false or misleading.

Finally, to the extent Plaintiffs allege that the statements regarding catheter sales and utilization were misleading representations of future demand, such statements are also protected by the safe harbor. *See Intuitive Surgical*, 2011 WL 3501733 at *9 (ruling that company's expectations with respect to procedures performed and revenue growth were protected as forward-looking statements).

### C. Plaintiffs Cannot Establish Loss Causation for Stock Price Declines Prior to the Announcement of the Restatement

In addition to seeking recovery for losses that occurred when Hansen's stock price fell following the October 19, 2009 announcement of the restatement, Plaintiffs also attempt to allege claims as to five stock price drops that occurred on dates prior to that announcement. Plaintiffs posit two theories in support of these pre-restatement claims, both of which fail.

First, Plaintiffs argue that the disclosures that preceded these pre-restatement stock drops revealed truth regarding alleged misrepresentations unrelated to the restatement. For example, Plaintiffs argue that stock drops in January and July 2009 followed disclosures that Hansen's

---

[7] In contrast to *SEC v. Todd*, 642 F.3d 1207 (9th Cir. 2011), Plaintiffs do not allege that Hansen's reported revenue misrepresented the actual number of catheter sales during Q108. *Compare id.* 642 F.3d at 1221-22 (company falsely recorded a sale of fixed assets as revenue).

12

prior guidance as to the number of systems it expected to sell had been inaccurate. Opp. at 24-25. However, as set out above, because of the safe harbor for forward-looking statements, Plaintiffs have failed to allege facts sufficient to establish that Hansen's forward-looking guidance was false. Consequently, there can be no liability for losses Plaintiffs incurred as a result of stock price drops that occurred when it was "disclosed" that Hansen had not accurately predicted the future. Plaintiffs' attempts to state claims as to other pre-restatement stock drops based on allegations of other purported misrepresentations unrelated to the revenue recognition errors disclosed in the restatement similarly fail due to Plaintiffs' inability to establish falsity, as is also set out above.

Second, Plaintiffs attempt to fold these prior stock drops into their claims relating to the restatement itself. However, the fact that the October 19, 2009 announcement of the restatement resulted in a drop in Hansen's stock price does not relieve Plaintiffs of the burden of establishing loss causation as to the prior stock drops for which they seek recovery. To the contrary, where, as here, a plaintiff contends that multiple disclosures revealed the truth, "[t]he analysis of each of the disclosures is governed by the decisions of the Supreme Court in *Dura Pharmaceuticals* and of the Ninth Circuit in *In re Daou Systems, Inc. Securities Litigation*." *In re Mercury Interactive Corp. Sec. Litig.*, No. C 05-3395 JF, 2007 WL 2209278, at *6 (N.D. Cal. July 30, 2007). As the Ninth Circuit has explained, the "careful delineation [in *Daou*] between losses caused after the company's conduct was revealed, and losses suffered before the revelation," is meant to ensure that it is the revelation of misconduct that "caused the resulting losses." *Metzler Inv. GMBH v. Corinthian College, Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008).

Consequently, to establish loss causation, a plaintiff must actually allege that the stock drop at issue followed a disclosure of information about the alleged fraud itself. *Compare In re Immersion Corp. Sec. Litig.*, No. C-09 4073 MMC, 2011 WL 871650, at *8-9 (N.D. Cal. Mar. 11, 2011) (rejecting attempt to plead loss causation based on pre-restatement disclosures unconnected to the alleged fraud) *with In re Apollo Group Sec. Litig.*, No. 08-16971, 2010 WL 5927988, at *1 (9th Cir. June 23, 2010) (permitting plaintiffs to pursue claims relating to additional stock drops following published news articles providing "additional or more

13

1  authoritative information" regarding company's previously-announced potential regulatory
2  violations). Indeed, Plaintiffs' own authority, *Alaska Elec. Pension Fund v. Flowserve Corp.*,
3  572 F.3d 221, 230 (5th Cir. 2009), affirms that Plaintiffs must allege that the prior disclosures
4  revealed some "relevant truth," *i.e.*, a "truth obscured by the fraudulent statement." *Id*. at 230.
5      Plaintiffs do not allege that any of the pre-restatement stock drops came after disclosure
6  of any "relevant truth" regarding the revenue recognition errors that had been "obscured" by
7  Hansen's financial statements. Instead, they argue that the stock drops followed disclosures of
8  poor financial results that were a consequence, or a "materialization," of Hansen's revenue
9  recognition errors. Opp. at 23-24, n. 20. Such "materialization of fraud" theories are
10 consistently rejected by the courts. As the Fifth Circuit explained in *Flowserve*, it is not
11 sufficient to argue that the disclosure revealed the "true financial condition" of a company that
12 was a "consequence of the fraud," because under such a theory of loss causation, "any disclosure
13 of [a company's] weakening financial condition would relate to its earlier misstatements." 572
14 F.3d at 230; *see also Rackable*, 2010 WL 3447857, at *12 (generic disclosures regarding a
15 company's financial condition and future prospects are not "coded message[s] revealing the
16 fraud." (quoting *Metzler*, 540 F.3d at 1064)).
17     Moreover, Plaintiffs not only concede that Hansen's October 19, 2009 announcement
18 was the first disclosure of the fact that Hansen's financial statements contained revenue
19 recognition errors, they allege that the very pre-restatement disclosures as to which they are
20 seeking recovery actually operated to "conceal" the alleged fraud. *See* TCAC ¶¶ 217, 304, 313-
21 14, 333-35, 344-45, 352. Plaintiffs cannot reasonably argue that the same disclosures
22 simultaneously concealed *and* revealed corrective information about an alleged fraud. *See In re*
23 *Redback Networks, Inc. Sec. Litig*., No. C 03-5642 JF, 2007 WL 963958, at *1 (N.D. Cal. Mar.
24 30, 2007); *Powell v. Idacorp, Inc*., No. CV04-249-S-EJL, 2006 WL 851116, at *3 (D. Idaho
25 Mar. 29, 2006).
26     Because Plaintiffs have not alleged facts demonstrating that any pre-restatement
27 disclosure revealed any alleged revenue recognition errors or any other actionable
28

1 misrepresentation, any claims relating to such disclosures and accompanying stock drops must
2 be dismissed.

### D. Plaintiffs Do Not Allege a "Control Person" Claim

The Section 20(a) claim fails because Plaintiffs fail to plead sufficiently a primary Section 10(b) claim. *See Zucco*, 552 F.3d at 990. In addition, they do not plead that Moll, Van Dick or Restani were in some meaningful way "control persons" with reference to the fraudulent conduct alleged in the primary violation. *See, e.g.*, *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (affirming summary judgment where defendant was not "involved in [the alleged misstatement] in any significant way"); *In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp. 2d 1181, 1193-94 (N.D. Cal. 2010) (dismissing boilerplate allegations of control). As such, this claim must be dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendants Hansen, Moll, Van Dick and Restani's Motion to Dismiss should be granted with prejudice.

DATED: March 23, 2010

BINGHAM MCCUTCHEN LLP
David M. Balabanian
Charlene S. Shimada
John D. Pernick
Lucy Wang
Three Embarcadero Center
San Francisco, CA 94111-4067
Telephone: 415.393.2000
Facsimile: 415.393.2286

By: /s/ Charlene S. Shimada
    Charlene S. Shimada

Attorneys for Defendants Hansen Medical, Inc., Frederic H. Moll, Steven M. Van Dick and Gary C. Restani