LIONEL Z. GLANCY (#134180)
PETER A. BINKOW (#173848)
EX KANO S. SAMS II (#192936)
ROBERT V. PRONGAY (#270796)
JOSHUA L. CROWELL (admitted *pro hac vice*)
GLANCY BINKOW & GOLDBERG LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:     (310) 201-9150
Facsimile:     (310) 201-9160
E-mail:        info@glancylaw.com

*Lead Counsel for Plaintiffs*
*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| ROBERT CURRY, Individually and on Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>HANSEN MEDICAL, INC., FREDERIC H. MOLL, STEVEN M. VAN DICK, GARY C. RESTANI, and CHRISTOPHER SELLS,<br><br>                    Defendants. | Lead Case No. 4:09-cv-05094-CW<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF** |
| AND RELATED ACTIONS | Date:      November 21, 2013<br>Time:      2:00 p.m.<br>Courtroom:  2<br>Judge:     Hon. Claudia Wilken |

1    PLEASE TAKE NOTICE THAT on November 21, 2013, at 2:00 p.m., in the Courtroom

2  of the Honorable Claudia Wilken, United States Courthouse, Courtroom 2, 1301 Clay Street,

3  Oakland, California, Lead Plaintiffs Mina Farr and Nader Farr, along with plaintiffs Robert

4  Curry, Kim M. Prenter, Muthusamy Sivanantham, Jean Cawood, and Gary Cawood will move

5  this Court for entry of the Proposed Order: (1) finally approving the settlement of this

6  Litigation; (2) certifying the Settlement Class; and (3) approving the Plan of Allocation for the

7  distribution of the Settlement Fund.

8    This motion is based on this Notice of Motion and Motion, the supporting Memorandum

9  of Points and Authorities, the Declaration of Lionel Z. Glancy, the [Proposed] Order submitted

10  concurrently herewith and all pleadings and papers filed in this action, the arguments of

11  counsel, and any other matters that the Court may consider at the hearing of this motion.

12  DATED: October 4, 2013              GLANCY BINKOW & GOLDBERG LLP

13

14                                      By:   *s/Lionel Z. Glancy*
                                        Lionel Z. Glancy
15                                      Peter A. Binkow
                                        Ex Kano S. Sams II
16                                      Robert V. Prongay
                                        Joshua L. Crowell (admitted *pro hac vice*)
17                                      1925 Century Park East, Suite 2100
                                        Los Angeles, California 90067
18                                      Telephone: (310) 201-9150
                                        Facsimile:  (310) 201-9160
19

20                                      *Lead Counsel for Plaintiffs*

21                                      ROBBINS GELLER RUDMAN
22                                        & DOWD LLP
                                        Willow E. Radcliffe
23                                      Ivy T. Ngo
                                        655 West Broadway, Suite 1900
24                                      San Diego, CA  92101-3301
                                        Telephone: (619) 231-1058
25                                      Facsimile: (619) 231-7423

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES OF HOWARD G. SMITH
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel for Plaintiffs*

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     OVERVIEW OF THE LITIGATION AND SETTLEMENT ........................................... 2

III.    APPLICABLE STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
        SETTLEMENTS.................................................................................................... 4

IV.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
        SETTLEMENT AND CERTIFY THE SETTLEMENT CLASS..................................... 5

        A.      The Settlement Is Fair, Reasonable and Adequate  ................................. 5

                1.      The Overall Strength of Plaintiffs' Case, Including the Risk, Expense,
                        Complexity, and Likely Duration of Further Litigation, Supports Final
                        Approval of the Settlement  ................................................................ 5

                        a.      PSLRA Cases Have Significant Obstacles to Success  ............... 6

                                i.      The Risk of Establishing Scienter ..................................... 7
                                ii.     The Risk of Proving Loss Causation and Damages........... 7

                        b.      Continued Litigation Would Be Risky and Expensive  ................ 8

                2.      The Risks of Achieving Class Action Status and Maintaining that Status
                        Throughout Trial Support Approval of the Settlement.............................. 9

                3.      The Amount Offered to Settle the Action Represents a Significant
                        Portion of Provable Damages ................................................................ 10

                4.      The Amount of Discovery Completed and the Stage of the
                        Proceedings Support Approval of the Settlement.................................... 12

                5.      Experienced Counsel Concur that the Settlement, Which Was
                        Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable,
                        and Adequate ....................................................................................... 13

                6.      The Reaction of the Class Members Supports Approval
                        of the Settlement .................................................................................. 14

**TABLE OF CONTENTS**
(continued)

B.    The Settlement Class Should Be Certified ..........................................15

    1.    Certification Standards Generally..........................................15

    2.    The Settlement Class Satisfies the Requirements of Rule 23(a) ...........16

        a.    Numerosity...................................................................16

        b.    Commonality ...............................................................16

        c.    Typicality ...................................................................16

        d.    Adequacy....................................................................17

    3.    The Settlement Class Satisfies the Requirements of Rule 23(B)(3) Because Common Questions Predominate ...............................17

C.    The Plan of Allocation Fairly and Adequately Apportions the Settlement Fund Among Class Members and Thus Should Be Approved...........................18

D.    Notice to the Settlement Class Complied with Due Process ..............................19

V.    CONCLUSION ......................................................................................20

1

2

# TABLE OF AUTHORITIES

3

## CASES

*Amchem Prods., Inc. v. Windsor,*
     521 U.S. 591 (1997).................................................................................. 15, 18

*Basic, Inc. v. Levinson,*
     485 U.S. 224 (1988)......................................................................................... 10

*Class Plaintiffs v. City of Seattle,*
     955 F.2d 1268 (9th Cir. 1992) ..................................................................... 4, 18

*Eisen v. Carlisle & Jacquelin,*
     417 U.S. 156 (1974)......................................................................................... 19

*Ellis v. Naval Air Rework Facility,*
     87 F.R.D. 15 (N.D. Cal. 1980),..................................................................... 4, 13

*Evans v. Jeff D.,*
     475 U.S. 717 (1986).......................................................................................... 4

*Hanlon v. Chrysler Corp.,*
     150 F.3d 1011 (9th Cir. 1998) ................................................................ 4, 5, 14

*Hartless v. Clorox Co.,*
     273 F.R.D. 630 (S.D. Cal. 2011) ..................................................................... 18

*Hubbard v. BankAtlantic Bancorp, Inc.,*
     688 F.3d 713 (11th Cir. 2012) ........................................................................... 8

*In re Cendant Corp. Litig.,*
     264 F.3d 201 (3d. Cir. 2001) ........................................................................... 11

*In re Global Crossing Sec. & ERISA Litig.,*
     225 F.R.D. 436 (S.D.N.Y. 2004) ..................................................................... 19

*In re Heritage Bond Litig.,*
     No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .............. 6, 8, 11, 18

*In re Mego Fin. Corp. Sec. Litig.,*
     213 F.3d 454 (9th Cir. 2000) ................................................................... 4, 5, 14

*In re MicroStrategy, Inc. Sec. Litig.,*
    148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................................... 18

*In re Nissan Motor Corp. Antitrust Litig.,*
    552 F.2d 1088 (5th Cir. 1977) ..................................................................... 20

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................... 4, 6, 9, 11

*In re Oracle Sec. Litig.,*
    No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ............... 18

*In re Painewebber Ltd. P'ships Litig.,*
    171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................. 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
    148 F.3d 283 (3d Cir. 1998) ........................................................................ 11

*In re Scientific Atlanta, Inc. Sec. Litig.,*
    754 F. Supp. 2d 1339 (N.D. Ga. 2010) ........................................................ 8

*In re Sumitomo Copper Litig.,*
    189 F.R.D. 274 (S.D.N.Y. 1999) .................................................................. 11

*In re Syncor ERISA Litig.,*
    516 F.3d 1095 (9th Cir. 2008) .................................................................. 4, 9

*In re THQ, Inc., Sec. Litig.,*
    No. CV 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002)................. 15

*In re Warfarin Sodium Antitrust Litig.,*
    391 F.3d 516 (3d Cir. 2004) ........................................................................ 11

*In re Warner Commc'ns Sec. Litig.,*
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd* 798 F.2d 35 (2d Cir. 1986) ................................................................. 7

*Jenson v. Fiserv Trust Co.,*
    256 F. App'x 924 (9th Cir. 2007)................................................................... 9

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) .................................................................. 4, 5

*Linney v. Cellular Alaska P'ship,*
    Nos. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997),................. 4

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................. 9, 13

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ........................................................................................... 4

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*,
    487 F.3d 261 (5th Cir. 2007), .................................................................................... 10

*Peters v. Nat'l R.R. Passenger Corp.*,
    966 F.2d 1483 (D.C. Cir. 1992) ................................................................................ 19

*Riker v, Gibbons*,
    No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .......... 13, 19

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    130 S. Ct. 1758 (2010) ................................................................................................ 18

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ...................................................................................... 4, 5

*Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*,
    173 F.3d 713 (9th Cir. 1999) ........................................................................................ 9

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011) .................................................................................................. 9

*Yamner v. Boich*,
    No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ........................... 15

**STATUTES AND REGULATIONS**

15 U.S.C. § 78t............................................................................................................... 7

15 U.S.C. §78u-4 ........................................................................................................... 6

Federal Rules of Civil Procedure

      23............................................................................................................. 15

      23(a).......................................................................................... 15, 16, 17, 18

      23(a)(1).................................................................................................... 16

      23(a)(2).................................................................................................... 16

      23(a)(3).................................................................................................... 16

      23(a)(4).................................................................................................... 17

      23(b)(3)...................................................................................... 15, 17, 18

      23(c)(1)...................................................................................................... 9

      23(e).............................................................................................. 1, 4, 19

      23(f)........................................................................................................... 9

**OTHER AUTHORITIES**

4 A. Conte & H.B. Newberg, *Newberg on Class Actions* §11:42 (4th ed. 2002) ...................... 13

Manual for Complex Litigation (Third) § 30.42 (1995)................................................ 13

## I.      INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiffs Mina Farr and Nader Farr ("Lead Plaintiffs"), Plaintiffs Robert Curry, Kim M. Prenter, Muthusamy Sivanantham, Jean Cawood, and Gary Cawood (collectively, "Plaintiffs"), respectfully submit this memorandum in support of final approval of the settlement of this class action.  The terms agreed upon by the parties are set forth in the Stipulation of Settlement, which was preliminarily approved by this Court on July 25, 2013 (the "Settlement").[1]

As set forth herein, and in the Declaration of Lionel Z. Glancy, filed herewith ("Glancy Decl."), the Settlement was reached after an extensive investigation conducted by Lead Counsel; the filing of four highly-technical and detailed amended complaints; contentious motion practice with respect to Defendants' two motions to dismiss and Plaintiffs' motion for leave to file a fourth amended complaint; substantial discovery, including voluminous document review; and arm's-length settlement negotiations conducted over four mediations with the aid of three renowned mediators.

The merits of the Settlement are demonstrated by, *inter alia*: the significant recovery – approximately $8.50 million, consisting of $4.25 million in cash and a common stock component with a value of $4.25 million – approximately 38.79% of Lead Plaintiffs' maximum estimated damages of $21,913,642; the significant risk of continuing litigation; and the time and expense required to prosecute the case to a final judgment and through any ensuing appeals. The Settlement is especially fair, reasonable, and adequate considering the diminished financial condition of the Company and the limited amount of insurance that was available to fund the Settlement.

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant final approval of the Settlement and the Plan of Allocation, finally certify the Settlement Class, and

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated May 9, 2013. (Dkt. No. 158, Ex. 1, filed May 24, 2013) (the "Stipulation").

enter the proposed Final Judgment and Order of Dismissal with Prejudice for this action as filed on May 24, 2013. Dkt. No. 158, Ex. 1-B.[2]

## II.    OVERVIEW OF THE LITIGATION AND SETTLEMENT

This matter relates to Hansen Medical, Inc. ("Hansen"), a medical device company. Plaintiffs allege that Defendants recklessly misrepresented Hansen's financial condition to investors by improperly recognizing revenue on alleged sales of its medical devices. This Litigation was brought on behalf of those who purchased or acquired the common stock of Hansen between February 19, 2008 and October 18, 2009, inclusive (the "Class Period"). On February 25, 2010, pursuant to a Court Order, these complaints were consolidated in this above-captioned action, and the Court appointed Mina Farr and Nader Farr as Lead Plaintiffs and designated Glancy Binkow & Goldberg LLP as Lead Counsel. Dkt. No. 15. On October 18, 2011, Plaintiffs filed a Third Consolidated Amended Class Action Complaint (the "Complaint"). Dkt. No. 69. Plaintiffs filed the Complaint against Hansen, Frederic H. Moll, Steven M. Van Dick, Gary C. Restani and Christopher Sells. Dkt. No. 69. The Complaint sought an unspecified amount of damages and asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, related to Hansen's statements during the Class Period regarding its improperly recognized revenue.

In connection with investigating and developing this highly-technical case, Lead Counsel consulted accounting experts and damages consultants. Indeed, the Settlement was ultimately reached only after Lead Counsel conducted an extensive investigation of the claims asserted, interviewed witnesses, amended the Complaint three separate times, successfully opposed Defendants' second motion to dismiss, produced initial disclosure information, negotiated a confidentiality order, and conducted discovery (including the strategic review of over 1.5 million pages of documents, critical to Plaintiffs' claims, produced in response to

---

[2] A copy of the Final Judgment and Order of Dismissal with Prejudice is also being filed concurrently herewith as the proposed order.

1    Plaintiffs' discovery requests and the review of substantial documents produced pursuant to

2    third-party subpoenas and Freedom of Information Act ("FOIA") requests).

3        During the four years of this Litigation, the parties have repeatedly attempted to resolve

4    this case through mediation.  The first three mediations were unsuccessful.  Yet the parties

5    continued to attempt to find a resolution to this contentious Litigation.  An in-person session

6    was held on April 3, 2013.  At this mediation, the parties agreed to the material terms of a

7    settlement of the Litigation. This was followed by extensive negotiation over the terms of the

8    Stipulation, which included numerous discussions and exchanges of drafts of the Stipulation

9    and its exhibits.  Ultimately, the parties came to an agreement on all terms of the Settlement,

10   which was memorialized in the Stipulation.

11       As Lead Counsel expended significant effort and attained a thorough understanding of

12   the strengths and weaknesses of the Class's claims, and as the Settlement is the product of

13   arm's-length negotiation by experienced counsel with the assistance of a respected mediator,

14   Lead Counsel is confident that the Settlement's terms are fair and reasonable, and provide the

15   Class with an excellent recovery.

16       Additionally, the reaction to the Settlement has been favorable.  Over 29,500 Claim

17   Packets have been sent to potential Settlement Class Members containing the Court approved

18   Notice and Proof of Claim form, which explain the terms of the proposed Settlement.  Glancy

19   Decl., ¶¶8, 56, 91-92 & Ex. 1 at ¶7.[3]  To date, there has only been one objection to the

20   Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees and

21   expenses.  Keough Decl., ¶13.  Moreover, only one of the thousands of Settlement Class

22   Members has requested to be excluded from the Settlement.  *Id.* at ¶12.[4]

---

23

24   [3] The Declaration of Jennifer Keough Regarding (A) Mailing of the Notice and Proof of Claim,

25   (B) Publication of the Summary Notice, and (C) Requests for Exclusion or Objections ("Keough
     Decl.") was previously submitted to the Court as Dkt. No. 165.

26

27   [4] All objections and requests for exclusion will be addressed in the reply memorandum in

28   further support of final approval and Lead Counsel's request for an award of fees and expenses
     that will be subsequently filed with the Court.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   APPLICABLE STANDARDS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS

In deciding whether to approve a proposed settlement pursuant to Federal Rule of Civil Procedure 23(e), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("the court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.") (citing *Class Plaintiffs*, 955 F.2d at 1276).

There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, it is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).  Ultimately, "[a] settlement should be approved if it is 'fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (citation omitted); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625.  To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place[,] create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, Nos. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd* 151 F.3d 1234 (9th Cir. 1998); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981).

As explained herein, the Settlement was reached only after hard-fought litigation between experienced counsel on both sides, and it is the product of negotiations conducted with the assistance of well-respected mediators.  Under these circumstances, Plaintiffs respectfully submit that the Settlement should be afforded the presumption of fairness, and that final approval should be granted.

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT AND CERTIFY THE SETTLEMENT CLASS

### A.   The Settlement Is Fair, Reasonable and Adequate

To determine whether a proposed settlement is fair, reasonable and adequate, a court may consider "some or all" of the following factors: (1) the strength of the plaintiffs' case, including the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status through trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) the presence of a governmental participant; and (7) the reaction of the class members to the proposed settlement.  *Linney*, 151 F.3d at 1242; *Hanlon*, 150 F.3d at 1026; *Torrisi*, 8 F.3d at 1375.  "This list is not exclusive and different factors may predominate in different factual contexts."  *Torrisi*, 8 F.3d at 1376 (citation omitted).  Plaintiffs acknowledge that these factors should be thoroughly explored where, as here, a settlement is reached prior to formal class certification.  *Mego*, 213 F.3d at 458.  As set forth below, an analysis of each of these factors demonstrates that the Settlement is fair, adequate, and reasonable in this case.

#### 1.   The Overall Strength of Plaintiffs' Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

Lead Counsel, who have a great deal of experience in litigating and resolving complex securities class actions, carefully evaluated the merits of this case, in light of all of the risks and potential weaknesses, before Plaintiffs entered into the Settlement.  Indeed, Plaintiffs and their counsel conducted a thorough investigation of the claims in this action whose merits are intertwined with highly-technical facts regarding the accounting concerning the installation of

medical devices.  In addition to their industry-specific investigation, Lead Counsel conducted a detailed review of Hansen's public filings with the SEC, its press releases and transcripts from its quarterly earnings calls and investment conference appearances, as well as a broad review of media, analyst and news reports about the Company, and other publicly-available data, including trading data relating to the price and trading volume of Hansen's publicly-traded securities.  In addition, Lead Counsel reviewed more than 1.5 million pages of documents produced by the Company and substantial documents produced pursuant to third-party subpoenas and FOIA requests, interviewed witness, and, in connection with investigating and drafting the four amended complaints, consulted with an accounting expert and a damages consultant.

Thus, while Plaintiffs believe that the case is strong based on the substantial research and investigation conducted, they must be cognizant of the substantial risk posed to the Class in continuing this Litigation, *to wit*, that the case might not be certified, or that the Litigation might succumb at the summary judgment stage to attacks regarding loss causation, scienter, liability, or damages.  *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at \*7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced") (citations omitted); *Omnivision*, 559 F. Supp. 2d at 1041.

### a.    PSLRA Cases Have Significant Obstacles to Success

In addition to the general risks of any litigation, a heightened level of risk existed because this Litigation is subject to the provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, which makes it more difficult for investors to successfully prosecute securities class actions.  The claims in this action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), were brought on the theory that Defendants improperly recognized revenue on purported sales of Hansen's Sensei Robotic Catheter System.  To succeed on the Section 10(b) claim, Plaintiffs would have to prove that Defendants knowingly, or with deliberate recklessness, issued materially false and misleading statements and omissions of fact, that the members of the Settlement Class relied upon

Defendants' misconduct (*e.g.*, proof of an efficient market for Hansen stock), and that Settlement Class members were damaged when the truth was revealed.  Glancy Decl., ¶¶63-67. Each element of the claim has been hotly contested.[5]

### i. The Risk of Establishing Scienter

Obtaining a favorable jury finding on the element of scienter is hardly a foregone conclusion.  Plaintiffs would have to demonstrate that Defendants improperly recognized revenue on Hansen's sales of its medical devices with deliberate recklessness or with knowledge that investors could be deceived.  While the Court has ruled that Plaintiffs' Third Amended Complaint had adequately alleged that Defendants acted with a strong inference of scienter, Plaintiffs and Lead Counsel are aware of the challenges of actually proving it at trial. Indeed, Defendants have steadfastly denied that they in any way knowingly or recklessly improperly recognized revenue.  It is plausible that a jury could believe Defendants.

### ii. The Risk of Proving Loss Causation and Damages

Proving that the misstatements caused a significant loss for investors, and that the Class suffered damages as a result of Defendants' misconduct, also posed a significant challenge. Determining the amount of losses or that the Company's disclosures actually caused the declines in Hansen stock would have required complicated expert testimony and use of methodologies that are debated among economists.  "In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions."  *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).  For these reasons, vigorous challenges to loss causation and damages posed a significant risk to the Class

---

[5] Under Section 20(a) of the Exchange Act, every person who controls any person liable under Section 10(b) shall be jointly and severally liable with the primary violator unless the control person acted in good faith and did not directly or indirectly cause the violation.  15 U.S.C. §78t. As explained in this section, for a variety of reasons, there are a number of obstacles to Plaintiffs prevailing on their Section 10(b) claim at trial.  If the Section 10(b) claim failed, there would be no predicate violation for Plaintiffs' Section 20(a) claim.

at summary judgment, trial, and on appeal.  *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (plaintiffs' jury verdict in a Section 10(b) securities fraud reversed based on failure to prove loss causation); *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment on the element of loss causation on the ground that class plaintiffs did not meet their burden of disentangling the fraud-related and non-fraud-related portions of the stock decline).

### b.    Continued Litigation Would Be Risky and Expensive

Regardless of the ultimate outcome, there is no question that further litigation would be expensive and complex.  The claims at the heart of this case involved technical, accounting issues with respect to the recognition of revenue for Hansen's purported sales of its medical devices.  For class certification, Plaintiffs would have had to procure an expert's declaration on the issue of market efficiency (as would have Defendants).  In addition to full briefing, documents would have been produced and expert depositions would have been taken.

With respect to discovery, Lead Counsel would anticipate, given the complexities of the issues involved in this Litigation, reviewing millions of additional pages of documents and taking substantial numbers of depositions, including depositions of the Defendants and Hansen personnel.  Following the close of merits discovery, the parties would engage in expert discovery.  Lead Counsel, on behalf of Plaintiffs and the Class, would have to procure expensive and complex expert testimony to prove loss causation and damages.  Defendants would present their own expert testimony to demonstrate that the alleged stock drops were not proximately caused by the revelation of the fraud, and/or attempt to demonstrate that at least a portion of the alleged stock drops were attributable to other things unrelated to revelation of the fraud.  Consequently, expert discovery and trial preparation would be expensive and complex.  *See Heritage*, 2005 WL 1594403, at *6 (noting that class actions have a well-deserved reputation as being the most complex).

Thus, the likely duration and expense of further litigation also supports a finding that the Settlement is fair, reasonable, and adequate.  Even if a class had been certified and the operative complaint survived Defendants' likely motion for summary judgment, continued prosecution of

the action would be complex, expensive, and lengthy, with a more favorable outcome than the Settlement highly uncertain.  After trial, any appeal would have to be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation.  Thus, the present value of a certain recovery at this time, as opposed to the mere chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, as well as the risk that the Class could receive no recovery.

At this point, almost four years into the Litigation, Plaintiffs are aware of the strengths and weakness of their case, some of which were brought into sharper focus while preparing for and attending the mediations.  In sum, despite the perceived strength of Plaintiffs' case, the risk, expense, complexity, and likely duration of further litigation clearly support approval of the Settlement.  *See In re Syncor ERISA Litig*., 516 F.3d at 1101; *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### 2.   The Risks of Achieving Class Action Status and Maintaining that Status Throughout Trial Support Approval of the Settlement

Here, the Class has been preliminarily certified for settlement purposes only. Dkt. No. 162.  But for this Settlement, Defendants likely would have strongly contested any motion for class certification and sought any opportunity to have a certified class de-certified.  *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").[6]

---

[6] Indeed, even if the class were to be certified in continued litigation, Defendants would have the right to petition the Ninth Circuit for an immediate interlocutory appeal pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. *See Jenson v. Fiserv Trust Co.*, 256 F. App'x 924 (9th Cir. 2007) (affirming class certification on a Rule 23(f) appeal).   Additionally, Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See, e.g., Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*, 173 F.3d 713, 721 (9th Cir. 1999) (noting that a certification order may be altered or amended "before the decision on the merits").  Consequently, maintaining class certification is an expensive and

In any securities fraud class action, the plaintiff faces significant challenges to certifying a class and maintaining class action status throughout trial.  Pursuant to *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), to obtain class certification, Plaintiffs would need to prove that Hansen's shares traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into Hansen's share price.  If Hansen's share price thus reflected Defendants' misstatements, purchasing shares at market price would be considered a proxy for actual reliance and that element of the Section 10(b) claim could thus be proved class-wide.

In connection with the question of classwide reliance, Plaintiffs would have had to engage an economist to conduct an event study to demonstrate Hansen's securities' reaction to the release of material information.  Defendants likely would have contested that the market for Hansen stock was efficient, presented expert testimony of their own in support of their opposition to class certification, and may have even moved to strike the testimony of Plaintiffs' expert.  While Plaintiffs and Lead Counsel believe that certification of a non-settlement class would be appropriate in this case, and while conditional certification was granted by the Court in conjunction with preliminary approval of the Settlement, certification of the Litigation through trial was not guaranteed.  Accordingly, the risks of certifying the action and maintaining the Class throughout the litigation support approval of the Settlement.

### 3. The Amount Offered to Settle the Action Represents a Significant Portion of Provable Damages

The Settlement value, totaling approximately $8.5 million in combined cash and stock, constitutes 38.79% of Plaintiffs' maximum estimated damages of $21.9 million, and is therefore not only well within the range of fairness, but is an objectively excellent recovery.  Glancy Decl., ¶¶47, 83.

---

risky enterprise.  *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (reversing certification order obtained in 2004 and affirmed by a Ninth Circuit panel in 2007 and *en banc* in 2009); *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007), *abrogated by Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011) (class certification order reversed by the Fifth Circuit on the very point of law the Supreme Court later held invalid on appeal of the subsequent Fifth Circuit decision in *Halliburton*).

---

Indeed, settlements valued at a much lower percentage of possible damages are routinely approved. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Omnivision*, 559 F. Supp. 2d at 1042 (approving settlement amount of 9% of maximum potential damages); *cf.*, Glancy Decl., Ex. 2 at 7 (Cornerstone Research study reviewing settlements reported for the years 1996-2010, found that where, as here, estimated damages were less than $50 million that the average settlement was for 10.5% of damages – with that figure dropping to 10.3% in 2011).

Moreover, the estimated recovery of 38.79% of potential Class Period damages does not take into account the various defenses put forth by Defendants.  If a jury chooses to credit Defendants' damages and loss causation experts over Plaintiffs' experts, in whole or in part, with respect to whether a significant portion of either or both of the alleged share price declines were causally related to Defendants' alleged misrepresentations and omissions, damages could substantially be reduced or eliminated. *See, e.g., Heritage*, 2005 WL 1594403, at *7 (citing *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 282 (S.D.N.Y. 1999)) (noting instances where a settlement was rejected by a court only to have the ultimate recovery generated by continued litigation be less than the proposed settlement).

Finally, when compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," the Settlement reached in this case is even more valuable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004).  Thus, where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court," the recovery of a substantial sum certain today, weighs in favor of the Settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998); *see also Omnivision,* 559 F. Supp. 2d at 1042 ("[T]he Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.    The Amount of Discovery Completed and the Stage of the Proceedings Support Approval of the Settlement

Plaintiffs have sufficient information to evaluate the prospects for this case on a going-forward basis and assess the adequacy of the Settlement.  By the time the Settlement was reached, Lead Counsel had:  (1) reviewed and analyzed Hansen's Class Period and pre-Class Period public filings, annual reports, press releases, quarterly earnings call and industry conference transcripts, and other public statements; (2) collected and reviewed a comprehensive compilation of analyst reports and major financial news service reports on Hansen; (3) reviewed and analyzed stock trading data relating to Hansen; (4) reviewed Lead Plaintiffs' qualifications to serve as class representatives; (5) consulted extensively with accounting and damages experts; (6) investigated medical company practices with respect to recognizing revenue of the sale of medical devices; (7) researched Generally Accepted Accounting Principles as they related to the Litigation; (8) drafted the initial complaint and three amended complaints to comply with the PSLRA and to include highly-technical accounting allegations; (9) researched and drafted successful oppositions to Defendants' Motion to Dismiss; (10) served interrogatories and document requests on Defendants; (11) engaged in meet and confer efforts concerning discovery disputes;  (12) negotiated a confidentiality order approved by the Court; (13) served many FOIA requests on various entities, including the Veterans Administration and hospitals run by the VA; (14) strategically reviewed over 1.5 million pages of document discovery; (15) interviewed witnesses and former employees of the Company; (16) consulted damages experts; (17) drafted a fourth amended complaint and sought leave from the Court to allow its filing; and (18) prepared for and engaged in four different mediations, including drafting mediation statements and giving presentations, as well as continued negotiation efforts over the weeks following the mediation in order to finalize the Settlement.  Glancy Decl., ¶¶14-32, 37-38, 42-43, 62.

Under these circumstances, Plaintiffs and Lead Counsel were in an excellent position to evaluate both the strengths and weaknesses of the Litigation and the substantial risks of continued litigation, and to conclude that the Settlement provides a fair, adequate, and

reasonable recovery in the best interests of the Class.  Having sufficient information to properly evaluate the Litigation, Lead Counsel has managed to settle this Litigation on terms very favorable to the Class without the substantial additional expense, risk, and uncertainty of continued litigation.  This factor thus weighs in favor of this Court's final approval of the Settlement.

> **5.    Experienced Counsel Concur that the Settlement, Which Was Negotiated in Good Faith and at Arm's-Length, Is Fair, Reasonable, and Adequate**

"[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."  *Ellis*, 87 F.R.D. at 18; *see also Nat'l Rural*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  Moreover, "a presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  MANUAL FOR COMPLEX LITIGATION (Third) § 30.42 (1995); *Riker v, Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) (quoting 4 A. Conte & H.B. Newberg, *Newberg on Class Actions* §11:42 (4th ed. 2002)).

This case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in the area of securities litigation.  Glancy Decl., ¶¶78, 80, and Exs. 3 & 6-F (Plaintiffs' counsels' firm resumes).   In addition, the Settlement was ultimately achieved with the aid of a nationally-regarded mediator, Robert A. Meyer.  Glancy Decl., ¶¶9, 25, 33.  The Parties engaged in negotiation during an all-day mediation on April 3, 2013.  *Id.* at ¶¶25, 27, 33.  The negotiations were in good faith, at arm's-length and were in no way collusive.  *Id.* at ¶¶36-37.  After a day of spirited discussion and back-and-forth bargaining, and continued negotiation with the aid of Mr. Meyer over the ensuing weeks, the Parties agreed to settle the Litigation for $8.5 million in cash and stock.

After the Settlement in principle was reached, the parties engaged in further negotiations over the details of the Stipulation and the other facets of the Settlement and its documentation. *Id.* at ¶33.  Only after several weeks of additional negotiations, and substantial effort in drafting all of the Settlement-related documentation and necessary filings, did the parties finally agree to all the terms of the Settlement reflected in the Stipulation.  *Id.*  That the Litigation was hard-fought at every stage by experienced counsel strongly weighs in favor of a finding that the Settlement is fair and reasonable and should be approved.

### 6.    The Reaction of the Class Members Supports Approval of the Settlement

Pursuant to the Court's Order dated July 25, 2013 (the "Preliminary Approval Order" Dkt. No. 162), 29,540 Notice Packets were sent to potential Settlement Class Members, and Summary Notices were published in *Investor's Business Daily* and distributed over *Globe Newswire*.  Glancy Decl., ¶¶8, 56, 91-92; Keough Decl., ¶9 & Exs. B & C thereto.  While the deadlines for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement, the Plan of Allocation and the application for attorneys' fees and expenses – October 25, 2013 – have yet to pass, to date, the reaction of the Class has been favorable.  For example, as of the date of filing this motion only one objection has been received to the Settlement, Plan of Allocation, or any other aspect of the Settlement.[7]  Glancy Decl., ¶¶8, 57, 92, 101; Keough Decl., ¶13.  In addition, as of the date of filing this motion, there has been only one request for exclusion from the Settlement.  Glancy Decl., ¶¶8, 57, 92; Keough Decl., ¶12.  "[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."  *Hanlon*, 150 F.3d at 1027; *see also Mego*, 213 F.3d at 458.

---

[7] All objections and requests for exclusion will be addressed in the reply memorandum in further support of final approval and Lead Counsel's request for an award of fees and expenses that will be subsequently filed with the Court.

1   Accordingly, the factors generally considered within the Ninth Circuit with regard to

2   settlement all support a finding that the instant Settlement warrants final approval as it is fair,

3   reasonable, and adequate.

4   **B.      The Settlement Class Should Be Certified**

5   In granting preliminary approval of the Settlement, the Court also preliminarily certified

6   a Settlement Class as set forth in the Stipulation of Settlement. Dkt. No. 162 at ¶4.   The

7   Settlement Class consists of all persons or entities who purchased or otherwise acquired the

8   publicly traded common stock of Hansen between February 19, 2008 and October 18, 2009,

9   inclusive, and were allegedly damaged thereby.   *Id.*   Excluded from the Class shall be the

10  Settling Defendants and their corporate affiliates, members of their immediate families, and

11  their heirs, successors and assigns, and any officers or directors of Hansen. *Id.*  As part of the

12  settlement process, Plaintiffs requests that the Court finally certify the Settlement Class for the

13  purpose of administering the Settlement.

14  **1.      Certification Standards Generally**

15  The Supreme Court has recognized the utility and necessity for certifying settlement

16  classes.  *See generally, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).  In certifying a

17  settlement class, the Court must determine that the criteria established by Fed. R. Civ. P. 23 are

18  met.  Whereas the action seeks damages and not injunctive relief, certification requires that the

19  action meet each of the requirements of Rule 23(a) (numerosity, commonality, typicality, and

20  adequacy) and the requirements of Rule 23(b)(3) (predominance and superiority).  In exercising

21  its judgment concerning certification, Plaintiffs respectfully request that the Court take into

22  account that "the law in the Ninth Circuit is very well established that the requirements of Rule

23  23 should be liberally construed in favor of class action cases brought under the federal

24  securities law." *In re THQ, Inc., Sec. Litig*., No. CV 00-1783AHM(EX), 2002 WL 1832145, at

25  *2 (C.D. Cal. Mar. 22, 2002) (internal citations omitted); *see also Yamner v. Boich*, No. C-92-

26  20597 RPA, 1994 WL 514035, at *2 (N.D. Cal. Sept. 15, 1994) ("The Ninth Circuit favors a

27  liberal use of class actions to enforce federal securities laws.").  As demonstrated below, each of

28  Rule 23's requirements are readily met in this Litigation.

### 2.     The Settlement Class Satisfies the Requirements of Rule 23(a)

#### a.     Numerosity

The class must be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  This Litigation clearly meets that requirement.  Hansen's securities were listed on a national exchange and widely traded.  So far, 29,540 copies of the Notice have been mailed to potential Settlement Class Members.  Glancy Decl., ¶¶8, 56, 91-92; Keough Decl., ¶8.  There are thousands of Settlement Class Members and joinder of all of them would be impracticable.

#### b.     Commonality

There also must be questions of either law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Because Defendants' actions at issue consist of statements made by or on behalf of a public company, this requirement is readily met.  Questions common to all Class Members include:  (1) whether the provisions of the Exchange Act were violated by Defendants' acts as alleged in the Complaint; (2) whether press releases, SEC filings, and other public statements issued by Defendants to the investing public, failed to accurately reflect the financial condition of Hansen; and (3) whether the revelation of the true facts to the investing public resulted in a decline in the price of Hansen stock.

#### c.     Typicality

This prong requires that the claims or defenses of the representative parties must be typical of the class's claims.  Fed. R. Civ. P. 23(a)(3).  Here, Plaintiffs' claims are typical of the claims of the Settlement Class.   Plaintiffs alleged that Defendants misrepresented the Company's revenue which resulted in artificial inflation of the price of the Hansen securities that Plaintiffs purchased, and that upon disclosure of the alleged misrepresentations, the value of the securities purchased by Plaintiffs declined.   Moreover, defenses relating to the sufficiency of Defendants' disclosures and potential alternative reasons for Hansen's share price decline apply equally to Plaintiffs and the Class.  Finally, the interests of Plaintiffs in obtaining a fair, reasonable, and adequate settlement of the claims asserted are consistent with the interests of the remaining Settlement Class Members, since under the proposed Plan of Allocation, Plaintiffs will receive the same *pro rata* share of the Settlement Fund as the rest of

the Class.  Thus, Plaintiffs were affected in the same ways as the other members of the Class, thereby satisfying the third criterion of Rule 23(a).

### d.   Adequacy

The representative parties must fairly and adequately protect the Class's interests.  Fed. R. Civ. P. 23(a)(4).   The fourth criterion of Rule 23(a) is also met in that Plaintiffs are represented by highly-qualified counsel with extensive experience in the prosecution of securities class actions.   Glancy Decl., ¶78 & Exs. 3 & 6-F.  Plaintiffs have adequately represented the interests of the Class to date, and will continue to do so until the conclusion of the Litigation.

Plaintiffs and Lead Counsel have prosecuted this Litigation, negotiated with Defendants, and have obtained a proposed Settlement that represents a significant percentage of the losses suffered by Settlement Class Members.   Plaintiffs have regularly communicated with Lead Counsel throughout this Litigation, and have thus fairly and adequately protected and advanced the interests of the Settlement Class. Glancy Decl., Exs. 9 & 10 (Declarations of the Lead Plaintiffs).   Thus, Plaintiffs and Lead Counsel have adequately represented the Class and fulfilled the requirements of Rule 23(a).

### 3.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3) Because Common Questions Predominate

In addition to satisfying the criteria of Rule 23(a), this Litigation meets the requirements of Rule 23(b)(3).   Questions of law or fact common to the Settlement Class Members predominate over questions affecting only individual members of the Class where, as here, the central issues relate to Defendants' public statements and Hansen's stock price reaction to the revelation of the fraud.  Moreover, permitting the claims of the entire Class to be resolved in a single forum is superior to other available methods of fairly and efficiently adjudicating the controversy.  Although the losses to individual members of the Settlement Class are significant, for most Class Members they are not sufficiently large to justify the expense of individual

actions.[8]  Accordingly, it is desirable to concentrate the prosecution of the claims in this forum and in a single, more cost-effective class action.  Finally, this action does not present any difficulties in the management and/or Settlement of the Litigation as a class action.[9]

Because the Settlement Class meets the requirements of Rules 23(a) and (b)(3), the Court should grant final certification of the Settlement Class.

### C. The Plan of Allocation Fairly and Adequately Apportions the Settlement Fund Among Class Members and Thus Should Be Approved

As part of the Preliminary Approval Order, the Court preliminarily approved the Class Notice and the Plan of Allocation therein.  Dkt. No. 162 at ¶6.  Plaintiffs do not seek to change that Plan of Allocation.  As part of the settlement process, Plaintiffs now request that the Court give final approval of the Plan of Allocation for the purpose of administering the Settlement.

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court."  *Heritage*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284 (citation omitted)).  "To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate."  *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284-85); *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.  It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits."  *Oracle*, 1994 WL 502054, at *1.  Therefore, as noted in *MicroStrategy*, 148 F. Supp. 2d at 669: "the plan . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also

---

[8]  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1783 (2010) ("When adjudication is costly and individual claims are no more than modest in size, class proceedings may be 'the thing,' *i.e.*, without them, potential claimants will have little, if any, incentive to seek vindication of their rights") (citation omitted).

[9]  The difficulty likely to be encountered in managing a class action, specifically trial manageability, is a factor of less importance where the proposal is that the action be settled and a trial is thus avoided.  *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011); *Amchem*, 521 U.S. at 620.

sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."

The proposed Plan of Allocation herein, preliminarily approved by the Court, was fully described in the Notice sent to the Class and has a rational basis.  Keough Decl., Ex. A at 10-11. Pursuant to the Plan, each similarly situated authorized claimant will receive a *pro rata* share of the Net Settlement Fund comprised of cash and stock, plus interest, less attorneys' fees and expenses and Lead Plaintiffs' award.  *Id.*; Glancy Decl., ¶¶3, 49.

The Plan was formulated by Lead Counsel, in consultation with damages experts, with the goal of reimbursing Settlement Class Members in a fair and reasonable manner.  *Id.* at ¶¶52-54.   For these reasons, Lead Counsel believe the Plan of Allocation fairly compensates Settlement Class Members and should be approved.  *Id.* at ¶¶49-54, 57-58.  *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'"); *Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

**D.**     **Notice to the Settlement Class Complied with Due Process**

Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class action] shall be given to all members of the class in such manner as the court directs." The purpose of the notice is to "afford members of the class due process which, in the context of the [R]ule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class action and not be bound by any subsequent judgment."  *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)). The Notice program utilized here, as set by the Preliminary Approval Order, easily meets this standard.

The Notice program was carried out by the Claims Administrator, Garden City Group ("GCG"), a nationally-recognized notice and claims administration firm, under the supervision of Lead Counsel. *See* Keough Decl.  GCG provided individual notice via first-class mail to each member of the Settlement Class whose address was reasonably ascertainable.  In addition, GCG caused the Summary Notice to be transmitted over *Globe Newswire* and published in *Investor's Business Daily*.  Keough Decl., ¶¶3-8, 11 & Exs. B & C; Glancy Decl., ¶¶56, 91.

The Notice amply describes the terms of the Settlement, the claims at issue, the releases, the process for objecting and opting out of the Settlement, how to make a claim, all pertinent deadlines, and the time, date and place of the Final Approval hearing.  Keough Decl., Ex. A (the Notice); Glancy Decl., ¶55.  Both a dedicated telephone hotline and a webpage were established to assist potential Class Members who had questions about the Settlement or the claims process.  Keough Decl., ¶¶9-10.  These efforts to inform Class Members of the Settlement, and their rights and obligations associated therewith, are more than sufficient to satisfy due process.  *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977) (holding that notice must contain "an adequate description of the proceedings written in objective, neutral terms, that . . . may be understood by the average absentee class member").

## V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an order and judgment: (i) granting final approval of the Settlement and Plan of Allocation; (ii) finally certifying the Class for purposes of the Settlement; (iii) finding that notice to the Class satisfied due process; and (iv) entering the proposed Judgment and Order of Dismissal with Prejudice of this Litigation.

DATED: October 4, 2013                    **GLANCY BINKOW & GOLDBERG LLP**


                                          By: *s/Lionel Z. Glancy*
                                          Lionel Z. Glancy
                                          Peter A. Binkow
                                          Ex Kano S. Sams II
                                          Robert V. Prongay
                                          Joshua L. Crowell (admitted *pro hac vice*)

1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160

*Lead Counsel for Plaintiffs*

**ROBBINS GELLER RUDMAN**
**  & DOWD LLP**
Willow E. Radcliffe
Ivy T. Ngo
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone: (619) 231-1058
Facsimile: (619) 231-7423

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Additional Counsel for Plaintiffs*

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO NORTHEN DISTRICT OF CALIFORNIA LOCAL RULES AND LOCAL CIVIL RULE 5-1**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

On October 4, 2013, I caused to be served the following documents:

1.   **NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND REIMBURSEMENT OF LEAD PLAINTIFFS' COSTS AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

2.   **NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

3.   **DECLARATION OF LIONEL Z. GLANCY IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT, CLASS CERTIFICATION AND THE PLAN OF ALLOCATION, AND PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

By posting the document to the ECF Website of the United States District Court for the Northern District of California, for receipt electronically by the parties as listed on the attached Court's ECF Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 4, 2013, at Los Angeles, California.

*s/ Lionel Z. Glancy*
Lionel Z. Glancy

# Mailing Information for a Case 4:09-cv-05094-CW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Stephen Edward Berge**
  stephen.berge@pillsburylaw.com

- **Peter Arthur Binkow**
  info@glancylaw.com,pbinkow@glancylaw.com

- **Christina Lucen Costley**
  christina.costley@kattenlaw.com,ecf.lax.docket@kattenlaw.com

- **Joshua L Crowell**
  jcrowell@glancylaw.com

- **Ana N. Damonte**
  ana.damonte@pillsburylaw.com,docket@pillsburylaw.com

- **Lionel Z. Glancy**
  info@glancylaw.com,lboyarsky@glancylaw.com,lglancy@glancylaw.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com,csadler@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Sarah A. Good**
  sarah.good@pillsburylaw.com,docket@pillsburylaw.com,winnie.girard@pillsburylaw.com

- **Jeffrey Scott Jacobi**
  jeffrey.jacobi@pillsburylaw.com,kathy.stout@pillsburylaw.com

- **John D. Pernick**
  john.pernick@bingham.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,mmgoldberg@glancylaw.com,jcrowell@glancylaw.com

- **Willow E. Radcliffe**
  willowr@rgrdlaw.com,khuang@rgrdlaw.com,ingo@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Ex Kano S. Sams , II**
  esams@glancylaw.com

- **Charlene Sachi Shimada**
  charlene.shimada@bingham.com

- **Bruce G. Vanyo**
  bruce@kattenlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore

require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`